**Salem**

DAVID MICHAEL HOGAN

v.

COMMONWEALTH OF VIRGINIA

No. 0428-86

Decided September 1, 1987

COUNSEL

Alton B. Prillaman (Thomas B. Dickerson; Jolly Place, Fralin &. Prillaman, P.C., on brief), for appellant.

Margaret Poles Spencer, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KEENAN, J.** — David M. Hogan was convicted in a jury trial of robbery, malicious wounding, and use of a firearm in the commission of a malicious wounding. In accordance with the jury's verdict, Hogan was sentenced to ten years for robbery, eight years for malicious wounding, and two years for use of a firearm. The issues on appeal are: (1) whether the court erred in denying Hogan's pre-trial motion for independent psychiatric assistance; (2) whether the court erred in prohibiting the testimony of two doctors regarding Hogan's ability to recall the day of the crime; (3)

whether the court erred in failing to grant a mistrial based on the testimony of a prosecution witness that Hogan "fled the city" and was "on the run;" and (4) whether the evidence was sufficient to sustain the convictions. Finding no reversible error, we affirm.

## I.

David Hogan, an indigent, was indicted for the present offenses on December 2, 1985. He filed a motion, by counsel, on December 9, 1985, asking the court to furnish him with "a psychiatrist of his own choosing and at the expense of the Commonwealth." No specific reason was given for this request; however, at a pre-trial hearing counsel stated that from what he knew about Hogan, "we have a serious problem here." Counsel indicated that sanity would be an issue at trial and represented to the court that he was "unable to get anything from the defendant about the . . . facts surrounding this alleged robbery."

The court reviewed a report prepared at the request of the Roanoke City General District Court by Dr. Conrad Daum, a private psychiatrist. In this report, dated August 23, 1985, Dr. Daum found Hogan competent to stand trial under Code § 19.2-169.1. The court also reviewed a letter which Dr. Daum sent to Hogan's counsel, but which does not appear in the record. The court read aloud a portion of the letter in which Dr. Daum indicated that he had not assessed Hogan's sanity at the time of the offense. Based on this information, the court ordered Dr. Daum to conduct an evaluation of Hogan's sanity at the time of the offense.

Hogan objected to the court's ruling on the ground that Dr. Daum was not a sufficiently "independent" psychiatrist under the principles of *Ake v. Oklahoma*, 470 U.S. 68 (1985). Hogan acknowledged that Dr. Daum was "somewhat of an independent," but argued, however, that since Dr. Daum was frequently employed by the court, he was not truly independent. The court rejected this argument, stating:

> You're getting Dr. Daum. I don't ——— I'm not ruling that the threshold looked to in *Ake* has been reached. For the third time, you're getting it because Dr. Daum indicated in his report he didn't have all the information he needed to

make the determination [of sanity at the time of the offense]. And I'm granting that without having to reach that threshold question because the General District Court apparently requested it and he said, "I can't be sure because I don't have what I need." That's the way I read that letter.

The trial court's ruling was incorporated into an order which granted Hogan's motion for an independent psychiatric examination, "not in accordance with the ruling of *Ake v. Oklahoma*, but . . . that Dr. Conrad Daum be appointed to examine the defendant as to his mental status at the time of the offense due to the fact that he had previously examined the defendant and needed more information to perform a comprehensive examination." This ruling was reaffirmed by the court in an order dated February 19, 1986.

Dr. Daum's report was filed on March 24, 1986. He reiterated that Hogan was competent to stand trial and reported:

While he [Hogan] claimed significant gaps in his memory for the events that occurred on or about June 1, 1985, his current memory and thinking appeared to be of a level that he could, with his attorney's help, evaluate information presented about his behavior at that time and work with his attorney to reconstruct his behavior and thinking at that time, as best it can be retrieved, with information currently available.

At a pre-trial hearing on March 24, 1986, Hogan objected to the court's final ruling that no further psychiatric assistance would be provided. In view of the court's ruling, Hogan's counsel withdrew his insanity defense stating: "[W]e do not at this time have what I consider sufficient evidence to put the Commonwealth on notice that we would intend to offer an insanity defense."

An order entered on March 24, 1986, states: "[I]t appearing to the Court after hearing argument on the above motion that an independent psychiatrist has heretofore been provided the Defendant and the motion is not made for good cause shown, it is accordingly ADJUDGED, ORDERED and DECREED that the request [for further court-appointed psychiatric assistance] herein be

denied."

The court also heard argument on March 24, 1986, regarding the Commonwealth's motion *in limine* asking the court to prevent Hogan from introducing testimony at trial from two mental health experts (Dr. Daum and Dr. Saute) for the purpose of showing Hogan's "mental state" at the time of the offense. The Commonwealth's position was that absent an insanity plea, evidence regarding Hogan's mental state would be irrelevant.

In response, Hogan argued that he wanted the doctors to testify that he had amnesia and could not therefore remember the events of June 1, 1985. Hogan conceded that this information was not relevant to issues of guilt or punishment. He further conceded that he was not relying on an insanity defense. He argued, however, that the jury should be aware that his failure to testify was due to the alleged amnesia and not because he had something to hide.

The court noted that an instruction would be given, at counsel's request, admonishing the jury not to draw any inferences from Hogan's failure to testify. Counsel responded that in his experience, such an instruction "means very little." The court disagreed and granted the Commonwealth's motion to exclude the testimony of the doctors.

At trial, the victim, Eloise Marie Grubb, testified that on the evening of June 1, 1985, she was working as a cashier at the Pic Quick Market. She testified that while she was alone in the store a man came in, got a six pack of beer from the cooler, and brought it to the check-out counter. She described the ensuing events as follows:

> I started ringing up the sale and when I looked up at him he was pointing a gun at me. And he says, "Give it to me, give it all to me." And I was having trouble getting the cash register open because I was nervous. And then he shot me.

Grubb testified that, although she was shot in the eye, she was able to get a good look at her assailant prior to the shooting. At her first opportunity to identify her assailant in a photographic lineup, Grubb was unable to make a positive identification. However, she later identified Hogan in a second photographic lineup.

Further, she identified Hogan in court as the man who shot her. Defense counsel conducted a lengthy cross-examination of Detective J.C. Clingenpeel, who conducted both lineups. However, no motion was made either before or during trial to suppress the results of the lineups or to strike the Commonwealth's evidence on the grounds of an inadequate or unconstitutional identification.

On cross-examination, Clingenpeel was asked why, during the first photographic lineup, he had shown Grubb a photograph of Hogan wearing a beard when she had indicated that her assailant was clean shaven.[1] Clingenpeel responded: "That's the only picture that I could come up with of the suspect because he was — he had fled the city. He was on the run." Defense counsel immediately objected and the court stated: "The jury should disregard — just respond to the question and disregard any allegation beyond that."

During a break in the Commonwealth's case, Hogan moved for a mistrial based on Clingenpeel's statement that Hogan had "fled the city," and was "on the run." The court overruled this motion, but stated that on closing argument the Commonwealth would be limited to stating that Clingenpeel's reason for showing the victim a picture of Hogan wearing a beard was that he had been unable to obtain any other pictures. At the close of trial, the jury was instructed not to consider any evidence which had been stricken.

Hogan moved to strike the Commonwealth's evidence at the close of its case, stating: "[J]ust for the record, let me make a motion to strike as insufficient as a matter of law to show a prima facie case at this point." The motion was overruled, and was not renewed at the conclusion of all the evidence. When the jury returned its verdict, defense counsel made the following motion: "Judge, I'd make a motion to set it [the verdict] aside as contrary to the law and the evidence." The motion was overruled.

## II.

We deal first with the court's rulings on the pre-trial motions. Hogan argues that his counsel expressed "serious problems" about

---

[1] There was testimony at trial that Hogan had a "full beard" shortly before and shortly after June 1, 1985. Grubb was shown a photograph of Hogan wearing a beard at the first lineup and without a beard at the second lineup.

his sanity and the court should, therefore, have ordered additional psychiatric assistance. Further, Hogan argues that the assistance that was provided by Dr. Daum was not "truly independent." The Commonwealth argues that Hogan failed to carry the threshold burden of *Ake v. Oklahoma,*, 470 U.S. 68 (1985), that "his sanity at the time of the offense [was] likely to be a significant factor at trial." *Id.* at 74. Moreover, the Commonwealth argues that, despite his failure to meet the *Ake* threshold, Hogan *was* provided court-appointed independent psychiatric assistance. Finally, the Commonwealth argues that since Hogan ultimately decided not to rely on an insanity defense, the entire issue is moot.

We find that the issue was not moot. Hogan withdrew his notice of intent to rely on an insanity defense because of his belief that he had not been given sufficient opportunity to develop evidence of his mental state at the time of the offense. However, we find that the court did not err in denying Hogan any further court-appointed psychiatric assistance.

The United States Supreme Court stated in *Ake*:

[W]hen a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue, if the defendant cannot otherwise afford one.

470 U.S. at 74.

We find that it is not necessary to address the issue whether Hogan carried the threshold burden required in *Ake*, because we believe that the trial court did, in fact, provide him with the services of an independent psychiatrist. We reject Hogan's argument that Dr. Daum was not an "independent" psychiatrist simply because he had been appointed by the court on prior occasions. The *Ake* decision does not give a defendant the right to have a psychiatrist of his own choosing. Instead, "the obligation of the State is limited to provision of one competent psychiatrist." 470 U.S. at 79. We find that Dr. Daum met these criteria.

Hogan next argues that Dr. Daum and Dr. Saute should have been allowed to testify that, based on their professional opinion, Hogan was not able to remember the events of June 1, 1985, be-

cause of self-induced drug or alcohol intoxication. Hogan argues that this testimony was necessary to explain to the jury his failure to testify. The court's refusal to allow this testimony is characterized by Hogan as an infringement of his right to call witnesses in his own behalf.

The Commonwealth argues that the jury was properly instructed not to draw an adverse inference from Hogan's failure to testify and that under *LeVasseur v. Commonwealth*, 225 Va. 564, 304 S.E.2d 644 (1983), *cert. denied*, 464 U.S. 1063 (1984), this court must assume that the jurors followed their instructions. The Commonwealth further argues that the evidence was properly excluded because it was admittedly irrelevant to the question of guilt or innocence. Finally, the Commonwealth argues that since Hogan did not testify regarding his memory loss, expert testimony which, in effect, would do nothing more than support his credibility was irrelevant.

We agree with the Commonwealth that the testimony of the doctors was properly refused. The only reason given for offering this testimony was to inform the jury that Hogan could not remember the events of June 1, 1985. Assuming that such testimony would have been relevant if there had been an attack on Hogan's credibility, it had no relevance, as Hogan concedes, to the question of guilt or innocence. Since Hogan did not testify and there was no attack on his credibility, the proffered testimony was irrelevant to any issue in the case. Irrelevant evidence is never admissible. *Boggs v. Commonwealth*, 199 Va. 478, 486, 100 S.E.2d 766, 772 (1957).

Further, the jury was properly instructed not to draw an adverse inference from Hogan's failure to testify. There was no need for testimony explaining Hogan's decision in this regard. We reject the suggestion made in Hogan's argument that the jurors' curiosity regarding his failure to testify would lead them to ignore the court's instruction that no adverse inference should be drawn therefrom. To the contrary, we assume that a jury will follow the law as instructed by the court. *LeVasseur*, 225 Va. at 589, 304 S.E.2d at 657.

## III.

■ Hogan next argues that the court should have granted his motion for a mistrial based on the testimony of Detective Clingenpeel that Hogan "fled the city" and was "on the run." He argues that even though the jury was instructed to disregard these statements and not to consider any evidence which was stricken, a mistrial was warranted because the remarks were highly prejudicial. We disagree. While it would have been preferable for the court to have made a more explicit admonition to the jury regarding these statements, we believe that the court's meaning was clear. Further, the court later instructed the jury not to consider any evidence which was stricken. As the Supreme Court stated in *LeVasseur*:

> "[E]rror arising from an improper question or improper conduct of counsel may usually be cured by prompt and decisive action of the trial court without granting a motion for a mistrial." The [t]rial court must make an initial factual determination, in the light of all the circumstances of the case, whether the defendant's rights had been so indelibly prejudiced as to require a new trial. Unless we can say as a matter of law that this determination was wrong, it will not be disturbed on appeal. Unless the record shows the contrary, it is to be presumed that the jury followed an explicit cautionary instruction promptly given.

225 Va. at 589, 304 S.E.2d at 657 (quoting *Black v. Commonwealth*, 223 Va. 277, 286, 288 S.E.2d 449, 454 (1982))(citations omitted). We cannot say that the trial court's determination was wrong as a matter of law.

Finally, Hogan argues that the evidence was insufficient to sustain the conviction. His argument is addressed solely to the reliability of the victim's identification of him as the perpetrator. We find from the record that Hogan failed to properly preserve this issue for appeal.

Although Hogan now argues that the photographic lineups were improperly conducted, he made no motion before or during trial to suppress the results of the lineups. Further, counsel's motions to strike the Commonwealth's evidence did not specify that they

were based on the Commonwealth's alleged failure to prove the element of identification.

Rule 5A:18 states:

> No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown, or to enable the Court of Appeals to attain the ends of justice. A mere statement that the judgment or award is contrary to the law and the evidence is not sufficient to constitute a question to be ruled upon on appeal.

In interpreting this rule we have stated: "[T]he primary purpose of the contemporaneous objection rule is to advise the trial judge of the action complained of so that the court can consider the issue intelligently and, if necessary, take corrective action to avoid unnecessary appeals, reversals, and mistrials." *Head v. Commonwealth*, 3 Va. App. 163, 167, 348 S.E.2d 423, 426 (1986). Consistent with this purpose, we have held that objections must be stated with specificity, *Ingram v. Commonwealth*, 1 Va. App. 335, 341, 338 S.E.2d 657, 660 (1986), and that a general objection made "for the record" is insufficient. *Royal v. Commonwealth*, 2 Va. App. 59, 62, 341 S.E.2d 660, 662 (1986).

In the present case, Hogan failed to obtain a ruling from the trial court on his present contention that the lineups were improperly conducted and the evidence of identification was otherwise insufficient. Thus, we have no ruling of the trial court to review. Further, the general motion made by counsel to strike the evidence did not specify the grounds he now relies upon and did not, therefore, provide the court with an opportunity to consider his present claims. Under the circumstances, we find that Hogan failed to present the trial court with a specific objection relating to the identification issue he now appeals. *See Wise v. Commonwealth*, 230 Va. 322, 333, 337 S.E.2d 715, 722 (1985), *cert. denied*, 475 U.S. 1112 (1986). Finding no reason here to waive this requirement in the interest of justice, we will not consider Hogan's arguments regarding the identification issue.

In summary, we find that the trial court did not err in refusing Hogan additional court-appointed psychiatric assistance; that it

did not err in excluding the proffered testimony of Drs. Daum and Saute; that it did not err in denying Hogan's motion for a mistrial; and that Hogan failed to preserve for appellate review the issue whether the victim's identification of him was insufficient as a matter of law.

*Affirmed.*

Koontz, C.J., and Moon, J., concurred.