**Alexandria**

NORMAN JEFFREY HELMS

v.

COMMONWEALTH OF VIRGINIA

No. 0625-88-4

Decided May 22, 1990

COUNSEL

E. E. Sanders, Jr., for appellant.

Robert Q. Harris, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BAKER, J.**—Norman Jeffrey Helms (appellant) appeals his bench trial conviction by the Circuit Court of Prince William County (trial court) for possession of phencyclidine (PCP). He asserts that the trial court erred by failing to suppress (1) the evidence of PCP discovered in a film canister found in his possession during a lawful pat-down search of his person, and (2) the laboratory analysis of the residue found in a pipe taken from him during the course of the pat-down.

A confidential informant told the Prince William County police that PCP was being sold from the premises known as 8633 Newton Place in that county. Thereafter, a controlled purchase was made at that address. A search warrant for the purpose of seizing PCP was then obtained for the premises. A county police investigator, Kelmartin, assisted in the execution of the warrant and the search. Upon entering the house, Kelmartin encountered appellant only a few feet from the front door. Appellant was not named in the warrant nor was he initially suspected of possessing, selling or distributing PCP.[1] He did not act suspicious and was cooperative when confronted, ordered to lie down and submit to a personal search. The search of appellant revealed that he had on his person a film canister, a small pipe and some keys, which were taken into custodial control by Kelmartin, who then opened the canister and found that it contained PCP. Appellant concedes that safety reasons justified the warrantless search of his person; however, he denies that probable cause for an arrest existed prior to the search of the canister, and asserts that Kelmartin had no right to examine the canister's contents without a search warrant.

At the suppression hearing, Kelmartin testified that he was aware that sales of PCP had taken place on the premises for which a search warrant had been procured; that when he saw the

---

[1] No individual was named or described in the affidavit made to obtain the warrant.

film canister it went through his mind that it contained PCP or some other type of narcotic; and that he opened the canister because he believed that a felony was being committed in his presence. He further stated that he could not see the contents prior to opening the canister but that by holding it he could tell that it held "some type of loose material," not film. He knew that the canister did not contain a weapon. Upon opening the canister, based on his training and experience, he concluded that it contained parsley treated with PCP. He then placed appellant under arrest for possessing PCP.

The Commonwealth argues that the record shows that Kelmartin stated that, based on his prior experience and knowledge, he was aware that film canisters are used to distribute illegal drugs. In making its finding, the trial court noted that the officer's knowledge, experience and education disclosed that film canisters are often used for the sale of PCP. The record, however, fails to support those arguments or the conclusion of the trial court. Kelmartin did not testify that from his knowledge and experience film canisters are used to transport drugs. It was the contents found after opening the canister that Kelmartin identified from his knowledge and experience, not the purpose for which film canisters are commonly used.

The Commonwealth heavily relies on *People v. Hughes*, 767 P.2d 1201 (Colo. 1989) to support Kelmartin's right to open the canister without a warrant. In *Hughes*, the Court held that the officer had the right to open a film canister found on a defendant who was on the premises for which a search warrant had been issued because (1) the defendant was "connected to the premises" by a description the police had of him as "a drug supplier" and (2) because that record contained evidence from the police that "a film canister is an item frequently used to carry cocaine." Neither of these reasons were established on this record.

The Commonwealth further argues that the actions of Kelmartin are supported by *Wright v. Commonwealth*, 222 Va. 188, 278 S.E.2d 849 (1981). The *Wright* case involved "exigent circumstances" not disclosed by the record before us.

 When a person with standing (*i.e.*, legitimate expectation of privacy) objects to a warrantless search of his person or property, the burden is on the prosecution to show a need for such a

warrantless search. *United States v. Jeffers*, 342 U.S. 48, 51 (1951). The Fourth Amendment to the Constitution of the United States guarantees the right of the people to be secure in their person and effects against unreasonable searches and seizures. The Supreme Court of the United States has interpreted that amendment to require that, absent exigent circumstances, searches of private property be performed pursuant to search warrants issued in compliance with the amendment's warrant clause. *Arkansas v. Sanders*, 442 U.S. 753, 758 (1979).

> In the ordinary case, therefore, a search of private property must be *both* reasonable *and* pursuant to a properly issued search warrant. *The mere reasonableness of a search, assessed in the light of the surrounding circumstances, is not a substitute for the judicial warrant required by the Fourth Amendment.*

*Id.* at 758 (emphasis added). The exigent circumstances that will justify a warrantless search include danger to the officer, search incident to a lawful arrest, or the risk of loss or destruction of evidence. None of the exceptions are apposite here. *See Jones v. United States*, 357 U.S. 493, 499 (1958).

We are aware that another panel of this Court has decided that under the facts of that case the police had probable cause to make a warrantless search of a film canister found in the defendant's pocket. *See Harris v. Commonwealth*, 9 Va. App. 355, 388 S.E.2d 280 (1990). We concur in the holding of that panel; however, we note key differences in the facts. In *Harris*, the defendant was seated in a moving vehicle whose driver had been reported to the police as "a fugitive from justice" and probably would be carrying narcotics and possibly weapons. The record in *Harris* further disclosed that when the vehicle was stopped there was "a lot of movement in the automobile;" that the officer who made the stop was warned to be careful; and that when defendant was asked to get out of the vehicle, he twice refused, complying only when the officer told him that if he did not comply he would be removed by force. In *Harris*, as here, the officers found a film canister in the defendant's possession; however, in *Harris* the officer specifically articulated in clear language that during "his *experience* as a police officer he had, on *numerous occasions, seen film canisters used to transport controlled substances.*" (emphasis added). In

*Harris*, the panel held that this experience and knowledge of the officer combined with the information possessed by the officer that the driver was in possession of narcotics, the officer's observation of the "movement in the vehicle which gave an opportunity for the occupants to exchange possession of the contraband," and the defendant's refusal to cooperate, constituted probable cause to search the canister sufficient to overcome the *per se* presumption of invalidity created by a warrantless search.

In the case before us, however, there was no vehicle which could be used to flee; appellant cooperated totally, offering no resistance. Except for being on the premises, there is no showing of appellant's association with any person who was the object of the police investigation, nor was any person named or described in the search warrant. The trial judge may have heard officers in other cases articulate (as in the *Harris* case) that from their knowledge and personal experience film canisters are frequently used to illegally transport narcotics; however, in the case before us, the record does not support the trial court's conclusion that Kelmartin possessed such knowledge and experience or that such knowledge and experience was the reason the officer made the warrantless search of the canister.

The record before us discloses no legally cognizable reason for the warrantless search of the film canister; therefore, we find that the trial court erred when it failed to sustain appellant's motion to suppress the evidence found therein. *See United States v. Chadwick*, 433 U.S. 1 (1977); *see also Matthews v. Commonwealth*, 218 Va. 1, 235 S.E.2d 306 (1977).

Appellant further argues that the trial court erred in failing to suppress the laboratory analysis of the content of the pipe found during the search. This argument was not stated to the trial court with the specificity required by Rule 5A:18 and will not be considered by us in this appeal. *See Hogan v. Commonwealth*, 5 Va. App. 36, 45, 360 S.E.2d 371, 376 (1987).

Because the evidence obtained from the film canister should have been suppressed, appellant's conviction will be reversed, and the case will be remanded for such further proceedings as the Commonwealth may be advised.

*Reversed and remanded.*

Keenan, J., concurred.

Coleman, J., dissenting.

I would uphold the ruling of the trial court and would affirm the conviction.

Helms concedes the validity of the search warrant, the legality of the search of the residence, the right to temporarily detain him to conduct a limited pat-down search for weapons, and the right to remove the film canister and pipe-like device from his pocket, *see Williams v. Commonwealth*, 4 Va. App. 53, 64-65, 354 S.E.2d 79, 85 (1987), but he contends that Officer Kelmartin had no legal right to open the canister.

Every warrantless search, even when supported by probable cause, is *per se* unreasonable and violative of the Fourth Amendment of the United States Constitution unless the search falls within certain established exceptions based generally upon the existence of exigent circumstances. *Thims v. Commonwealth*, 218 Va. 85, 88-89, 235 S.E.2d 443, 445 (1977). On the other hand, where the police are lawfully present executing a search warrant and inadvertently discover items which they have probable cause to believe are subject to seizure, they may seize the suspected contraband without obtaining another warrant. *Coolidge v. New Hampshire*, 403 U.S. 443 (1971); *see* 3 W. LaFave, *Search and Seizure* § 9.4(d)(2d ed. 1987). In this case, Officer Kelmartin was lawfully present at the residence executing a search warrant for drugs. During the search, he conducted a limited pat-down search of Helms, during which he discovered a container. According to the teachings of *Coolidge*, at the point Kelmartin observed the container in "plain view" he could seize it, provided he had probable cause to conclude that drugs were in the container. Thus, I agree with the majority that the question is whether probable cause existed under these circumstances for Officer Kelmartin reasonably and objectively to believe that the film canister contained PCP or some illicit drug. Like the trial court, I conclude that Kelmartin possessed probable cause to seize the container. In my view, the majority substitutes their judgment for that of the trial court in determining the existence of probable cause. *See United States v. Mendenhall*, 446 U.S. 544, 557 (1980); *Fore v. Com-*

*monwealth*, 220 Va. 1007, 1010, 265 S.E.2d 729, 731-32, *cert. denied*, 449 U.S. 1017 (1980). However, even if we were at liberty to review the facts *de novo* and draw our own inferences, I would conclude that the totality of circumstances provided Officer Kelmartin with probable cause to suspect that the film canister contained PCP or some illicit drug.

The ruling of the trial judge comes to us with a presumption of correctness, and the appellant has the burden of showing that the ruling was reversible error. *Fore*, 220 Va. at 1010, 265 S.E.2d at 731; Code § 8.01-680. In considering whether the appellant has met that burden, we view the facts in the light most favorable to the Commonwealth, according to it all reasonable inferences fairly deducible therefrom which would support the trial court's ruling. *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975); *Sutphin v. Commonwealth*, 1 Va. App. 241, 243, 337 S.E.2d 897 (1985). Additionally, in our deferential review of the trial judge's conclusions, we must remember that Helms had the burden of proof on all factual issues relating to the legality of the search; thus, Helms had the burden of establishing that Kelmartin lacked probable cause.

This standard of appellate review is of particular import in this case since the trial judge made specific findings of fact and stated for the record those inferences which led him to conclude that Officer Kelmartin had probable cause to believe the film canister contained drugs. By pointing us to the evidence upon which he relied and the inferences that he drew, the judge relieved us of the need to search the record for evidence from which some reasonable inference could be drawn to support his conclusion.

The probable cause necessary to make a warrantless search requires no greater, or lesser, quantum of evidence than would be needed to obtain a search warrant from a magistrate.

> [I]n assessing [a police officer's] probable cause for making a warrantless [search], no less strict standards may be applied than are applicable to a magistrate's determination that [a search] warrant should issue.

*De Priest v. Commonwealth*, 4 Va. App. 577, 584, 359 S.E.2d 540, 543 (1987), *cert. denied*, 488 U.S. 985 (1988). Thus, in reviewing whether the trial court had sufficient credible evidence to

conclude that Officer Kelmartin had probable cause to search the film canister, the same standards obtain as if a magistrate had reviewed the facts upon an application to issue a search warrant. A probable cause showing does not, however, equate to a *prima facie* case required to sustain a conviction. No more is demanded than a well-founded belief that the canister contained evidence subject to seizure.

> [P]robable cause deals with probabilities concerning the factual and practical considerations in everyday life as perceived by reasonable and prudent persons. It is not predicated upon a clinical analysis applied by legal technicians. In determining whether probable cause exists courts will test what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control.

*Id.* at 584, 359 S.E.2d at 543 (citations omitted).

"The constitutional validity of a warrantless search is pre-eminently the sort of question which can only be decided in the concrete factual context of the individual case." *Sibron v. New York*, 392 U.S. 40, 59 (1968). In reviewing whether sufficient credible evidence existed for the trial judge to conclude that Officer Kelmartin had probable cause to suspect that the film canister contained drugs, the following facts are significant. First, the police already knew that PCP had been sold in a controlled buy at the residence within twenty-four hours preceding the search and that a reliable informant had reported ongoing drug sales there. When Officer Kelmartin searched Helms for weapons, he detected a hard object in Helms' pocket and removed "a film canister and a small pipe-like device." The officer immediately suspected that the canister contained PCP. As to why he suspected PCP to be there, the officer testified:

Q. Was there certain knowledge in your mind as well the mind of the others as to certain activity that had taken place at that particular residence before the search?

A. There was.

Q. And what activity was that?

A. Selling of PCP.

Q. And when you saw the film canister what concern went through your mind at that time?

A. That inside that film canister was PCP or some other type of narcotic.

Q. Did you suspect that a felony was being committed in your presence at that point?

A. I did.

Q. What did you do in reference to that film canister?

A. I opened it.

Q. And what did you discover inside, if anything?

A. That it appeared to be parsley treated with PCP.

Q. And that's what you determined in the course of your training and experience?

A. Yes, sir.

\* \* \* \*

Q. And you did not know that the film canister contained film or PCP or anything else; right — when you saw it?

A. Well, just by holding it I could tell there was no film in it and there was some type of loose material.

The trial judge made the following findings and rulings:

The court finds that the searcher —the officer in question, Kelmartin, found a hard object in the pocket of the defendant while he was laying on the floor and during that pat-down that the small objects turned out to be a canister and a small pipe. The totality of the circumstances being that they were there because as suspected — the suspected sale of phencyclidine from that location, the people in that location,

the fact that the film canister is — the officer's knowledge and experience and education is oftentimes used for this purpose. He could tell that it was not a film in it because of — he said, of the handling of the canister, itself, and certainly, it was contraband.

The record not only provides substantial evidentiary support for the ruling, it also contains a statement of how those facts were considered by the trial court. The trial court considered the fact that Officer Kelmartin went to the residence with knowledge that a judicial probable cause determination had been made that PCP was recently being sold from this private residence. He also recognized that Kelmartin was directed to search the premises for PCP, and when Kelmartin removed a film canister and pipe-like device from a person at the residence who was standing near the doorway and determined that the canister did not contain film, but rather contained loose material, it was reasonable for Kelmartin to have believed, based upon Kelmartin's experience and training, that the canister contained PCP.

In my view, the opinion in *Harris v. Commonwealth*, 9 Va. App. 355, 388 S.E.2d 280 (1990), distinguished by the majority, supports the trial court's ruling that the officer had probable cause to believe that the film canister contained drugs. Admittedly, the officer in *Harris* more clearly articulated that based upon his law enforcement experience he knew that film canisters were used to transport drugs; however, Officer Kelmartin, in effect, expressed the same knowledge. But, while law enforcement experience may give significance to conduct or circumstances that otherwise appear innocuous, the discovery of a pipe-like device and a film canister containing "loose material" upon an individual where PCP was recently being sold, would cause even an inexperienced officer to conclude that the canister probably contained drugs. Furthermore, I am persuaded by the holding in several cases from other states which concluded, on similar facts, that probable cause existed to believe that a film canister contained drugs. In each of those cases, the seizure and opening of a container was upheld, either upon the theory that the scope of the search under the warrant was expanded when probable cause arose to search the container, or the prior finding of probable cause which supported the warrant, combined with the additional facts developed during search, justified a warrantless search of a container. Admittedly,

each case can be factually distinguished in some manner, but on balance, the facts in this case are as strong, or stronger, in support of the trial court's determination that probable cause existed for Kelmartin to seize and search the film canister.

In *People v. Hughes*, 767 P.2d 1201 (Colo. 1989), which the majority distinguishes and rejects, the court held a film canister which was lawfully removed from the defendant could be searched because it was a container likely to contain drugs. The court held that the search came "within the scope of the search warrant as a 'vessel' likely to contain" drugs. *Id.* at 1206. The majority distinguishes *Hughes* on the basis that, in *Hughes*, evidence existed to "connect [him] to the premises" and to prove that "a film canister is an item frequently used to carry [drugs]." Admittedly, those were facts present in *Hughes* which did contribute to the court's finding of probable cause to search Hughes and to search the film canister found on him. In my view, the absence of equivalent factual findings by the trial court does not inevitably establish the absence of probable cause to search the film canister in this case.

Moreover, contrary to the majority's holding, I believe the evidence here, as in *Hughes*, supports the inference which the trial court drew that based on "the officer's knowledge, experience and education . . . the film canister . . . is oftentimes used for this purpose [carrying drugs]." In my view, the majority adopts an unreasonably narrow and literal construction of the officer's statement when it concludes that the officer's training and experience only led him to believe that the parsley in the canister was probably treated with PCP, not that the canister contained drugs. While the officer's testimony does contain an affirmative representation that he thought the canister contained parsley treated with PCP, that portion of his testimony is simply a specific application of a more general suspicion, namely that film canisters are frequently used to carry drugs. If Kelmartin's training and experience led him reasonably to believe that PCP is frequently distributed on treated parsley, my reading of his testimony is that his training and experience reasonably led him to believe, as the trial court inferred, that PCP treated parsley is frequently carried in film canisters. I remain unpersuaded by the majority's effort to distinguish this case from *Hughes*, the rationale of which I find convincing.

In *State of New Jersey, In re L.Q.*, 236 N.J. Super. 464, 566 A.2d 223 (1989), a warrant was issued to search a private residence and "all persons found therein reasonably believed to be connected with the said property and investigation." While the search was in progress, L.Q. entered the house carrying a bag. When he attempted to leave, the officers seized and searched him and found cocaine in the bag he carried. There, the court concluded that, because ongoing illegal activity was occurring and because it was at a private residence rather than a public establishment frequented by innocent patrons, the situation differed from that in *Ybarra v. Illinois*, 444 U.S. 85 (1979), where the warrant to search the premises did not extend to the patrons. The court in *L.Q.*, distinguishing *Ybarra*, held that it was reasonable to conclude that anyone found at this private residence, not there for an obviously legal purpose, was probably involved in the illegal activity, and therefore, was subject to being searched. While the New Jersey court based the right to search upon the warrant, whether a search be by warrant or not, probable cause must exist to connect the person or place to be searched with the illegal activity. Thus, *L.Q.* is instructive because the court held that presence at a private residence where known ongoing drug activity was occurring, provided probable cause to search the bag carried by L.Q.

In *People v. Thurman*, 209 Cal. App. 3d 817, 257 Cal. Rptr. 517 (1989), while conducting a premises search for drugs based upon a warrant, the officer conducted a protective pat-down search of the defendant. Feeling a large bulge in the defendant's jacket pocket and believing it to be a weapon, the officer reached inside the pocket. The officer immediately realized that the item was not a weapon, but a plastic bag containing what he thought were "pieces of rock or rock cocaine." Based on his prior experience, the officer knew that rock cocaine "felt like rocks." The court held:

> Unlike a business open to the general public, [*Ybarra v. Illinois*], a private residence does not attract casual visitors off the street. When the private residence has been judicially determined as the probable site of narcotics transactions, the occupants are very likely to be involved in drug trafficking in one form or another.

*Id.* at 824, 257 Cal. Rptr. at 520. When the prior judicial determination of probable cause was combined with subsequently developed information, the court held that the officer had probable cause to remove the items from the defendant's pocket and, when they appeared to be drugs, to arrest him.

Each of these cases highlights the importance of the fact that, prior to the contested search, there had been a prior judicial determination of probable cause to believe that drugs were on the premises. Standing alone, this determination may not always give rise to probable cause to believe that a package, bag, or film canister connected with a person found at those premises contains drugs. However, it is a significant factor which, when combined with other circumstances, is entitled to great weight. In my view, the majority fails to accord the prior probable cause determination the significance to which it was entitled, and which the trial court gave it. In deciding whether Kelmartin had probable cause to believe that the canister contained PCP, the issuance of the search warrant was a significant factor which the trial judge clearly and properly considered.

In summary, I believe the trial court was fully justified in finding that, when Kelmartin removed the film canister and pipe-like device from Helms' pocket and determined that it contained loose material, based upon Kelmartin's training and experience, Kelmartin had probable cause to believe that the canister contained drugs. I would uphold the trial court's ruling.