COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judge Annunziata and Senior Judge Duff
Argued at Alexandria, Virginia

MELVIN A. RICHARDSON

v.   Record No. 0687-95-4          MEMORANDUM OPINION* BY
                                   JUDGE CHARLES H. DUFF
  COMMONWEALTH OF VIRGINIA              APRIL 23, 1996

            FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                    Paul F. Sheridan, Judge

        Janell M. Wolfe for appellant.

        Eugene Murphy, Assistant Attorney General
        (James S. Gilmore, III, Attorney General,
        on brief), for appellee.


     The appellant, Melvin A. Richardson, was convicted of

possession of cocaine following a jury trial.  On appeal he

raises two issues: (1) whether the trial court erred in refusing

to suppress the evidence found during an allegedly unlawful

search; and (2) whether there was sufficient evidence that he

possessed the cocaine.  For the reasons that follow, we affirm.

                          **BACKGROUND**

     After receiving "complaints about drug activity" at a

single-family residence located at 1315 South 13th Street,

Detective Lowell Tolliver supervised at least five "controlled

[drug] buys from that location."  The controlled buys occurred

between May and August of 1994.  Tolliver conducted surveillance

---

*Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

of the house, during which he "noticed a lot of short term traffic." Specifically, Tolliver "observed a lot of foot traffic, people going into the house and coming right back out, a lot of cars stopping in front of the house." There was also "dealing that would occur right out in front of it [the house]." During his surveillance, Tolliver often saw "a group of people standing out in front of the house."

Based on this information, Tolliver obtained a search warrant for the house. On August 4, 1994, Tolliver and approximately twelve other police officers approached the house in three or four cars to execute the warrant. Appellant was outside the house with a group of five or six men. Tolliver got out of his car and ran toward the house. As he "was running up to the residence Mr. Richardson [appellant], who was out front, ran in to the house. I called to him, I said stop, police[,] but he continued in, I was right behind him." Tolliver apprehended appellant in the living room. Tolliver wore a jacket with a police badge on one side and the words "Police" on the other side and on the back.

The police secured the residence and handcuffed everyone found inside. Tolliver "started doing a search of the residence."

Within minutes of entering the residence, Sergeant Trumble searched appellant. After patting him down, Trumble reached in appellant's right front pants pocket and pulled out a white,

2

"super glue container."  The contents were not visible.  Trumble handed the container to Tolliver, who "opened it and looked inside and noticed that there was like a white residue in there." The residue was analyzed as cocaine.

Tolliver provided the following testimony to explain why he opened the container:
> In my experience I have made some undercover purchases and on several occasions the purchases that I have made for crack, the people that were selling to me before would dump or pour crack in my hand from containers like that.

Tolliver recalled seeing super glue containers used on two prior occasions.  In addition, he stated, "I have gotten information from informants on other search warrants where those type of containers were located."  Tolliver had been a police officer for eleven years and on the vice unit for over five years.  He had attended drug enforcement training sessions, and had been responsible for "at least a hundred search warrants."

Although appellant's name was not listed on the search warrant, at the February 1, 1995 suppression hearing, Tolliver was asked, "Do you know who any of the occupants of the house were?"  Tolliver responded, "The one occupant that I knew of was a person known to me as wink-eye.  His name is Melvin Richardson."

### MOTION TO SUPPRESS CONTENTS OF THE CONTAINER

Because appellant concedes the propriety of the search disclosing the closed container, the narrow issue before us is

3

whether the police officer lawfully opened the container.

In reviewing a trial court's denial of a motion to suppress, "the burden is upon [the appellant] to show that this ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error." Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731, cert. denied, 449 U.S. 1017 (1980).

"[T]he Fourth Amendment . . . proscribes--except in certain well-defined circumstances--the search of [] property [seized pursuant to Terry v. Ohio, 392 U.S. 1 (1968)] unless accomplished pursuant to judicial warrant issued upon probable cause." Smith v. Ohio, 494 U.S. 541, 542 (1990).

> A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the [contraband] might be found.

United States v. Ross, 456 U.S. 798, 820-21 (1982).

> "As an articulated legal standard, probable cause deals with probabilities concerning the factual and practical considerations in everyday life as perceived by reasonable and prudent persons. It is not predicated upon a clinical analysis applied by legal technicians. In determining whether probable

4

cause exists courts will test what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control."

Lawson v. Commonwealth, 217 Va. 354, 359, 228 S.E.2d 685, 687 (1976) (quoting Hollis v. Commonwealth, 216 Va. 874, 876-77, 223 S.E.2d 883, 889 (1976)).

> "Courts have held that certain containers are so distinctive in nature that an officer may, based on his [or her] experience with such containers in previous arrests, have probable cause to search or seize such a distinctive container in plain view.  Examples of such containers are paper bindles, heroin balloons, and brick-shaped packages smelling like marijuana.  However, where the container is a common one with legitimate purposes, its presence is not enough to establish probable cause.

> \* \* \* \* \* \* \*

> "'. . . whether a common container constitutes a suspicious circumstance, capable of contributing to the totality of circumstances necessary for probable cause, depends on the total factual context in which the container is observed, including the prior experience of the observing officer with the containers of the sort at issue. . . .'"

People v. Limon, 21 Cal. Rptr. 2d 397, 404 (Cal. Ct. App. 1993) (upholding warrantless search of "hide-a-key" container of type officer had once before seen store illegal drugs where officer also observed suspicious behavior) (quoting People v. Nonette, 271 Cal. Rptr. 329, cert. denied, 498 U.S. 1087 (1990)) (other citations omitted).  See also People v. Hughes, 767 P.2d 1201

(Colo. 1989) (after defendant became linked to searched premises, search of canister on defendant was within scope of warrant); In re J.D.R., 637 A.2d 849 (D.C. 1994) (officer saw corner of "ziplock bag" sticking out of defendant passenger's arm cast; that fact and officer's knowledge through police experience that such bags commonly used as drug containers were sufficient to support trial court's denial of motion to suppress); State v. Maguire, 523 A.2d 120 (N.H. 1987) (holding that officer had probable cause to seize "amber-colored vial" he saw defendant furtively try to hide in his pocket; officer saw defendant and three others in public restroom).

Viewing the totality of the circumstances in the light most favorable to the Commonwealth, we find that there was sufficient evidence from which the trial court could find that Tolliver had probable cause to open the container.  The evidence established the following:

1.  The police had received complaints about drug activity at the location;
2.  The police made at least five controlled drug buys from the location, the last one within a week of the search;
3.  The police conducted extensive surveillance of the house and observed a lot of short term traffic;
4.  Tolliver testified that some drug dealing occurred outside, "right out on front" of the house;
5.  During surveillance, Tolliver often saw groups of people standing in front of the house;
6.  A detached, neutral magistrate found probable cause to issue a search warrant for the house;
7.  Appellant ran into the house when he saw the officers approach;
8.  Tolliver was highly experienced in drug investigations;
9.  During undercover buys made by Tolliver, "on several occasions" the sellers used "containers like

6

that [the glue container]" to store drugs;
10. Tolliver has seen super glue tubes used on two prior occasions; and
11. Tolliver has received information from informants on other search warrants where "those types of containers were located."

This case is distinguishable from situations where searches are conducted without a warrant or where there are no circumstances to link the searched item or person to the contraband being sought. See, e.g., Harris v. Commonwealth, 241 Va. 146, 400 S.E.2d 191 (1991) (reversing conviction where police stopped car in which defendant was passenger based on information from informant that driver was fugitive being sought; subsequent search of canister held illegal because officer was not looking for weapon; mere possession of canister that officer's experience led him to believe contained drugs, absent evidence that the informant supplying the tip was reliable or credible, was not enough); Helms v. Commonwealth, 10 Va. App. 368, 392 S.E.2d 496 (1990) (reversing conviction where defendant was located outside residence for which warrant was being executed and did not act suspicious; moreover, there was no evidence that searching police officer had seen such containers used to conceal drugs).

Here, appellant ran into the house just ahead of the police, who wore identifiable clothing, thereby linking himself to the house for which a warrant had been issued upon probable cause. Appellant's testimony that he visits the house "all the time," and the fact that he was present outside where Tolliver had seen prior transactions occur linked appellant more closely with the

7

house.  Moreover, Tolliver testified that he knew one occupant of the house, and "[h]is name is Melvin Richardson."

Based on the facts of this case, the officer possessed probable cause to believe that the container contained contraband that was the subject of the search warrant.  Accordingly, appellant has failed to show that the trial court's denial of the motion to suppress constituted reversible error.

## POSSESSION

"On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom."  Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

It is uncontested that the container was in appellant's pocket.  Moreover, appellant testified that he looked inside the container before placing it in his pocket.  Tolliver testified that, when he opened the container, he saw "white residue inside" that field tested positive for cocaine.

A conviction for possession of illegal drugs requires proof that the "defendant was aware of the presence and character of the drugs, and that he intentionally and consciously possessed them."  Josephs v. Commonwealth, 10 Va. App. 87, 99, 390 S.E.2d 491, 497 (1990) (en banc).  "Possession of a controlled drug gives rise to an inference of the defendant's knowledge of its character."  Josephs, 10 Va. App. at 101, 390 S.E.2d at 498-99.  "[E]vidence of flight may be considered as evidence of guilt

8

along with other pertinent facts and circumstances." Hope v. Commonwealth, 10 Va. App. 381, 386, 392 S.E.2d 830, 833 (1990) (en banc).

The following facts support the jury's determination that appellant knowingly possessed the cocaine:

1.  Appellant physically possessed the container;
2.  Appellant testified that he looked into the container before placing it in his pocket;
3.  Appellant fled from the yard into the house when he saw the police;
4.  The police were executing a search warrant on the house based on probable cause that drugs were sold from the house on numerous occasions;
5.  When Tolliver opened the container, it contained no glue, however, Tolliver saw a white, powdery substance in it; and
6.  Appellant testified that he was a frequent visitor at the house, indicating his awareness of the ongoing drug activity forming the basis for the warrant.

The Commonwealth's evidence was sufficient to prove beyond a reasonable doubt that appellant possessed cocaine. The fact finder need not accept appellant's claim that he did not know the glue tube contained cocaine. See Crumble v. Commonwealth, 2 Va. App. 231, 236, 343 S.E.2d 359, 362 (1986). Thus, the fact finder was entitled to accept only those parts of appellant's evidence that it found plausible and credible when considering all the facts presented to it.

For the foregoing reasons, we affirm appellant's conviction.

Affirmed.