COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Lemons and Frank
Argued at Chesapeake, Virginia


HARRY STEPHEN CAPRIO
                                    MEMORANDUM OPINION* BY
v.    Record No. 2225-98-1          JUDGE DONALD W. LEMONS
                                        MARCH 14, 2000
COMMONWEALTH OF VIRGINIA


         FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                   Johnny E. Morrison, Judge

         Dianne G. Ringer, Senior Assistant Public
         Defender, for appellant.

         Marla Graff Decker, Assistant Attorney
         General (Mark L. Earley, Attorney General;
         Stephen R. McCullough, Assistant Attorney
         General, on brief), for appellee.


     Harry Stephen Caprio appeals his conviction for second

degree murder.  On appeal, he argues that:  (1) the trial court

abused its discretion by denying his motion for a mistrial based

on the court's failure to strike a juror for cause, (2) that the

rebuttal argument of the Commonwealth's Attorney was improper

and should have been grounds for a mistrial or a cautionary

instruction, and (3) that the evidence was insufficient to

sustain the conviction.  Finding no reversible error, we affirm.

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

                          I.  BACKGROUND

     On August 5, 1991, Elizabeth Marie Bickley lived in a house
in Portsmouth with her tenant, Mike Webb.  Webb was moving out,
and Tanya Ayers was moving her possessions into the residence.
Bickley's mother went to the house that morning and noticed that
Bickley limped from a bruised hip and had a black eye.[1]  There
was a message on Bickley's answering machine from Caprio saying
that he was "off today" and would "be over this afternoon."
Bickley and Caprio had been friends since childhood.  That night
Webb and Ayers observed Caprio and Bickley leave together at
eight o'clock to buy beer.

     Bickley's body was found at eleven o'clock on August 5,
1991, in the middle of a road in Portsmouth, a short distance
from her home.  The cause of death was strangulation, both
manual and with a plastic wire tie.  Bickley also had received
extensive blows from a blunt object.  Electrical ties, similar
to the one found on Bickley, were found in a nearby baseball
field.

     At trial, Caprio testified that while they were driving,
Bickley became "upset" because he refused to assist her in
evicting Webb and she decided to walk home alone.  Caprio
claimed that after he let Bickley out of his truck, he circled
the block and when he returned, Bickley was gone.  Friends of

_____

     [1] Neither the bruised hip nor the black eye were caused by
Caprio.

                              -

Caprio testified that he came over to their house at about 9:00 or 10:30 that evening. At approximately 3:30 on the morning of August 6, Caprio returned home and woke his roommate Steven Edwards. He told Edwards that he and Bickley had a dispute, that she got out of the truck and that he spent the remainder of the evening with friends.

At trial, Webb testified that he had not seen Bickley alive since she left with Caprio the night before. Tanya Ayers testified that Bickley was afraid to go out at night because her previous boyfriend, who had just gotten out of jail, had threatened her.

Caprio was a general contractor and kept plastic wire ties in his garage and kept smaller ties in his truck. Jeffrey Ban of the Virginia Division of Forensic Science, testified that blood consistent with Bickley's DNA was found on the shorts that Caprio wore the night of the murder.[2] Dr. Bush of the Medical Examiner's Office, testified that Bickley died sometime between 8:30 p.m. and 12:30 a.m. on the night of August 5th or in the early morning hours of August 6th.

Caprio was indicted for second degree murder. He pled not guilty and was tried by a jury in the Circuit Court of the City

---

[2] The Commonwealth admitted into evidence Ban's report which stated that the probability of finding another person "is approximately one in 4.1 million in the Caucasian Population, 1 in 85 million in the Black Population, 1 in 10 million in the Hispanic Population." Bickley was Caucasian.

of Portsmouth.  During voir dire, the trial court asked the prospective jurors whether "we have anybody on the panel that may be familiar with, been associated with, or know[s] anything about or may have been represented by [this Commonwealth's Attorney] or anybody in the Commonwealth's Attorney's office?"  No venireperson responded.  After the struck jurors were excused and the jury of twelve had been sworn, the Commonwealth's Attorney advised the court that he had just realized that he went to high school with one of the jurors.  That juror was then questioned out of the presence of the other jurors about his relationship with the prosecutor.  The following exchange occurred:

> THE COURT:  . . . .  Do you know any of the lawyers involved in this case?
>
> JUROR:  I know the Commonwealth's Attorney.
>
> THE COURT:  You know [the Commonwealth's Attorney]?
>
> JUROR:  Yes.
>
> THE COURT:  How is it you know him?
>
> JUROR:  We played football in school.
>
>  *      *      *      *      *      *      *
>
> THE COURT:  What year did you graduate?
>
> JUROR:  '68.
>
> THE COURT:  '68; and since you all graduated, have you all socialized together, are close friends?

-

JUROR:  I've seen him in the community, but we don't socialize per se.

THE COURT:  The fact that you all played football together, went to the same high school, notwithstanding that fact, can you be fair and impartial to this trial, sir?

JUROR:  Oh, yeah.

THE COURT:  You can?

JUROR:  Yes, sir.

THE COURT:  Do you have any questions, [defense counsel]?

[DEFENSE COUNSEL]:  Yes, sir.  [Juror], the fact that you know [the Commonwealth's Attorney], would that give more credence, less credence, or no credence to what he said?  In other words, would you believe him if he said something versus other people?

JUROR:  I believe a man at his word, his word is truth; and I believe what a person says, if it's the truth, then it will tell. In other words, I don't believe a person because he's a friend or I know you.

[DEFENSE COUNSEL]:  And the fact that, as the Judge will tell you, the jury is to consider only the evidence that comes from the stand.  The lawyers' statements are not evidence.  They're just statements.  They're representing their side.  The fact that you played football with [the Commonwealth's Attorney] would not elevate his words to a higher standard?

JUROR:  No.

[DEFENSE COUNSEL]:  And do you feel in your heart you can give Mr. Caprio a fair hearing?

JUROR:  Yes.

-

[DEFENSE COUNSEL]:  Knowing [the Commonwealth's Attorney]?

JUROR:  Yes.

[DEFENSE COUNSEL]:  Y'all haven't been involved in any things as Norcom High School alumni, football games or anything like that?

JUROR: No, not lately.

[DEFENSE COUNSEL]:  Thank you.

Caprio moved "to have [the juror] taken off."  He stated, "I know [the juror's] answers may satisfy the Court, but for the record, I would ask that he be taken off.  We have, unfortunately, twelve jurors.  We have one who played football with [the Commonwealth's Attorney].  I would make a motion, I guess it would be for a mistrial."  Defense counsel further suggested that "knowing someone is not enough, but he is more connected and did not make any mention that he knew [the Commonwealth's Attorney] before.  I'm not saying he's trying to hide anything.  It may have been the way the question was worded.  I'm just making the motion for a mistrial."

The Commonwealth's Attorney responded that he graduated from Norcom High School in 1967 and had not socialized with the juror since graduation.  He added, "In fact, I've never really socialized with him, even when we went to high school . . . . We're talking thirty years ago."

Defense counsel noted that "the key was, you know, that it was after the jury was selected that we knew of this.  We

-

brought to the Court's attention before jury selection or during jury selection that there was a person on the jury that we know very well.  We brought that up at what I thought was the appropriate time.  It's just a little bit late at this point to do that."  The trial court denied the defendant's motion.

The jury found Caprio guilty of second degree murder.  No additional evidence was presented to the jury at the sentencing phase.  In his rebuttal argument, the Commonwealth's Attorney stated:

> Can you imagine what [the victim's] last words were?  Can you imagine what her last words were?  I imagine probably they were, "Steve, why are you doing this to me? Steve, why are you doing this to me?  What did I do to deserve this kind of beating, this kind of death?"
>
> I can't, you can't bring her back.  These folks out here sobbing and crying, they would trade anything if you could bring her back.  They have no problem walking about, walking out the door and going about their business if you could bring her back, but you can't bring her back; so what is your responsibility to this community, to this family, and all these people here?

Defense counsel interjected with, "Judge," and the trial court immediately responded, "All right; sustained."  The Commonwealth's Attorney continued, "What is your responsibility?"  Again, defense counsel interjected, "Judge, I would like to be heard at the bench."  The trial court told counsel to "[c]ome on up," and there was a discussion at the

-

sidebar.  The Commonwealth's Attorney completed his argument to

the jury without objection:

> Whatever you imagine her last words to be,
> whatever you imagine them to be, you can
> rest assured there was a plea for her life
> and it was a plea to stop the beating, it
> was a plea for her last breath, and he
> ignored it; so is he due any mercy from you?
> I don't think so.  He had his chance to be
> merciful.  It's your chance to meet [sic]
> out justice; and if ever a beating and
> murder justified the maximum penalty, this
> one does.  This one does.

The Commonwealth's Attorney ended his argument by asking the

jury to impose the maximum penalty.

Once the jury retired to deliberate, defense counsel asked

the court for permission to put certain previous objections on

the record.  The relevant objection relating to the

Commonwealth's Attorney's argument was:

> Judge . . . I timely [objected] to [the
> Commonwealth's Attorney's] second sentencing
> closing when he was talking about
> responsibility.  At that point, the Court
> allowed me to approach the bench.  I asked
> for a mistrial or a cautionary instruction.
> The Court said he would sustain that
> objection.
>
> Judge, we would make the motion clear that
> we were asking for a cautionary instruction
> or a mistrial based upon [the Commonwealth's
> Attorney's] comments at any part of the jury
> trial were improper and intended to have
> prejudicial value; and [the Commonwealth's
> Attorney] being the experienced prosecutor
> he is, he knows better than that; and Judge,
> we're putting the objection on the record
> and preserving the objection.

-

## II. PROSPECTIVE JUROR

Caprio first argues that although the prospective juror may not have been subject to automatic exclusion based on the relationship with the Commonwealth's Attorney, the failure to disclose this relationship on <u>voir</u> <u>dire</u> prevented Caprio from the intelligent exercise of his right to exercise a peremptory challenge. This argument was not presented to the trial court with the specificity required by Rule 5A:18 and will not be considered by us on appeal. See <u>Helms v. Commonwealth</u>, 10 Va. App. 368, 372, 392 S.E.2d 496, 498 (1990); <u>Hogan v. Commonwealth</u>, 5 Va. App. 36, 45, 360 S.E.2d 371, 376 (1987).

Caprio's second contention is that the prior relationship between the Commonwealth's Attorney and the juror coupled with the juror's failure to respond to the <u>voir</u> <u>dire</u> question demonstrates the juror's partiality.

Both the United States Constitution and the Virginia Constitution guarantee Caprio's right to an impartial jury. See U.S. Const. amend. VI, XIV; Va. Const. art. I, § 8; <u>see also</u> Code § 8.01-358; Rule 3A:14. The partiality or impartiality of an individual juror is an issue of fact that is to be determined by the trial court. See <u>Watkins v. Commonwealth</u>, 229 Va. 469, 480, 331 S.E.2d 422, 431 (1985), <u>cert.</u> <u>denied</u>, 475 U.S. 1099, 106 S. Ct. 1503, 89 L.Ed.2d 903 (1986); <u>Brown v. Commonwealth</u>, 28 Va. App. 315, 327, 504 S.E.2d 399, 405 (1998). Consequently, the trial court's decision whether to retain or exclude

-

individual veniremen is given deference on appeal since it is in a position to see and hear the juror. See Wainwright v. Witt, 469 U.S. 412, 426, 105 S. Ct. 844, 853, 83 L.Ed.2d 841 (1985); Eaton v. Commonwealth, 240 Va. 236, 246, 397 S.E.2d 385, 391 (1990); Brown, 28 Va. App. at 327, 504 S.E.2d at 405. When there is a "mid-trial" challenge to a juror's impartiality, this Court will reverse the trial court's decision to seat a prospective juror only for an abuse of discretion. Hunt v. Commonwealth, 25 Va. App. 395, 399, 488 S.E.2d 672, 674 (1997). Furthermore, we will not overturn "'the denial of a motion for a mistrial . . . unless there exists a manifest probability that [the ruling] was prejudicial.'" Taylor v. Commonwealth, 25 Va. App. 12, 17, 486 S.E.2d 108, 110 (1997) (quoting Bottoms v. Commonwealth, 22 Va. App. 378, 385, 470 S.E.2d 153, 157 (1996)).

The record indicates that the juror was unaffected by his prior relationship with the Commonwealth's Attorney. Furthermore, while under oath, the juror answered non-leading questions in his own words and repeatedly assured the court of his ability to remain impartial. See Educational Books, Inc. v. Commonwealth, 3 Va. App. 384, 389, 349 S.E.2d 903, 907 (1986) ("The evidence used to show the requisite qualifications for impartial jury service must emanate from the juror herself, unsuggested by leading questions posed to her."); Hunt, 25 Va. App. at 399, 488 S.E.2d at 674 (trial court properly refused to remove juror when juror revealed during the trial that she knew

-

members of the victim's family, but that this would not affect the juror's ability to provide the defendant with a fair trial).

The passage of over thirty years and the weak nature of the connection between the juror and the Commonwealth's Attorney account for both the juror and Commonwealth's Attorney's failure to immediately recall the other. There was no manifest probability that Caprio was prejudiced by the court's denial of his motion for a mistrial.

III. <u>THE COMMONWEALTH'S ATTORNEY'S REBUTTAL ARGUMENT</u>

Caprio next contends that the Commonwealth's Attorney's statements were improper. Based upon the timing of the objection and defense counsel's later explanation offered for the record, the issue we are limited to review on appeal is the propriety of the Commonwealth's Attorney's comments about the jury's responsibility to the community and to the victim's family.[3] <u>See</u> <u>Humbert v. Commonwealth</u>, 29 Va. App. 783, 791-92, 514 S.E.2d 804, 808 (1999) (limiting appeal of denial of motion for mistrial to that which was specifically preserved in the trial court); Rule 5A:18.

Due to the nature and timing of the penalty phase of a bifurcated trial, the Supreme Court of Virginia has consistently

---

[3] Caprio does not, however, specify which statements he finds objectionable. Furthermore, at trial, Caprio never suggested what made the Commonwealth's Attorney's comments improper. Caprio did object, however, and is now limited to the specific objection he raised at trial.

-

acknowledged the appropriateness of a deterrence argument to persuade a jury to assign a greater sentence to a guilty defendant.  See, e.g., Wilkins v. Commonwealth, 253 Va. 156, 482 S.E.2d 837 (1997) (Commonwealth's attorney's comments that jury had the "opportunity as the conscience of this community to deal with this person" and that the jury could "send the message to [the defendant] . . . that we will not tolerate the sale and purchase of drugs in this county" was proper at the penalty phase of trial); Hutchins v. Commonwealth, 220 Va. 17, 20, 255 S.E.2d 459, 461 (1979) (stating that the court did not disagree with the Attorney General's observation "that it is proper for a prosecutor to ask a jury to fix a punishment in a particular case that will deter others from committing like offenses"). The Commonwealth's Attorney's comments with respect to the jury's responsibility to the community were, therefore, entirely proper.  Neither a cautionary instruction nor a mistrial should have been granted based on this portion of his argument. Furthermore, references to the jury's duty to the victim's family were also proper since the Commonwealth's Attorney was only asking the jury to consider the loss to the family when assigning punishment.  See George v. Commonwealth, 242 Va. 264, 281-82, 411 S.E.2d 12, 22-23 (1991), cert. denied, 503 U.S. 973, 112 S. Ct. 1591, 118 L.Ed.2d 308 (1992).

IV.  SUFFICIENCY OF THE EVIDENCE

Since the Commonwealth's case involved circumstantial evidence, Caprio claims that his conviction should be reversed because the Commonwealth failed to exclude his reasonable hypotheses of innocence.  We disagree.

When the sufficiency of the evidence is challenged on appeal, this Court considers the evidence "in the light most favorable to the Commonwealth," affording it "all reasonable inferences" fairly deducible from the evidence.  Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975); Iglesias v. Commonwealth, 7 Va. App. 93, 109, 372 S.E.2d 170, 179 (1988) (en banc).  The decision of the trier of fact will not be disturbed on appeal unless plainly wrong or without evidence to support it.  See Wright v. Commonwealth, 224 Va. 502, 505, 297 S.E.2d 711, 713 (1982).  Determination of witness credibility and the weight to be afforded testimony are matters for the trier of fact.  See Swanson v. Commonwealth, 8 Va. App. 376, 378-79, 382 S.E.2d 258, 259 (1989).

Viewed in the light most favorable to the Commonwealth, the evidence proved that Bickley was limping the night of the murder and was afraid to go outside alone because her ex-boyfriend recently had been released from prison.  She was also afraid of the dark.  Webb, her tenant, was in the process of moving his possessions out of her house on the night of the murder.  Bickley was last seen alive at eight o'clock that night driving

-

off with Caprio in his truck to get beer.  At eleven o'clock, Bickley's beaten body was found near a convenience store and near her home.  She died by strangulation both manually and by use of a plastic wire tie, between 8:30 p.m. and 12:30 a.m. Caprio possessed similar tie-straps in his garage and in his truck.  Bickley's blood was found on the shorts Caprio wore the night of the murder.

When Caprio made a statement to the police, he told them that Bickley had gotten out of his truck and simply disappeared. According to Caprio, after they left the store, Bickley acted as if she was angry about something and kept telling him that "she wanted out" of the truck.  He also told the police that she was drunk, but when she was drunk she would not bother anyone. Caprio denied that they had a fight while she was in the truck and denied any knowledge of the murder.  At trial, however, Caprio testified that a fight occurred en route to the store because he would not help her evict Webb from her home. According to Caprio, Bickley became angry and belligerent and got out of his truck.  Furthermore, when Caprio originally told Bickley's mother about that night, he did not mention anything about Bickley discussing an argument with Webb.

Whether an hypothesis of innocence is reasonable is a question of fact, to be decided by the trier of fact.  See Cantrell v. Commonwealth, 7 Va. App. 269, 290, 373 S.E.2d 328, 339 (1988), cert. denied, 496 U.S. 911, 110 S. Ct. 2600, 110

-

L.Ed.2d 280 (1990). The Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those imagined by the defendant or his attorney. See Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993). The jury was entitled to reject the portions of Caprio's testimony that were not worthy of belief.

Caprio's hypothesis of innocence is implausible and inconsistent. In essence, Caprio argues that Bickley, who was too scared to go outside alone, got out of his truck in the middle of the street because he would not help her evict a tenant who was already packing his possessions to leave and that, despite her limp, she was able to walk off and disappear in the short time it took him to circle the block. Bickley was last seen alive with Caprio. She was strangled manually and with a plastic wire tie. Similar ties were found in Caprio's garage and truck. Bickley suffered extensive blows from a blunt object. Her blood was found on the shorts worn by Caprio that night. The evidence is sufficient to sustain the verdict, and the conviction is affirmed.

Affirmed.