COURT OF APPEALS OF VIRGINIA

Present: Judges Elder, Bray and Senior Judge Baker
Argued at Richmond, Virginia

STACY LAMONT HAYES, S/K/A
 STACEY HAYES

                                          OPINION BY
v.    Record No. 3025-97-2         JUDGE LARRY G. ELDER
                                          MAY 11, 1999
COMMONWEALTH OF VIRGINIA

          FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
                   Oliver A. Pollard, Jr., Judge

          Daniel W. Hall, Assistant Public Defender,
          for appellant.

          Steven A. Witmer, Assistant Attorney General
          (Mark L. Earley, Attorney General, on brief),
          for appellee.


     Stacey Hayes (appellant) appeals from his bench trial

conviction for possession of cocaine and forged United States

currency. On appeal, he contends the trial court erroneously

(1) denied his motion to suppress the cocaine, altered U.S.

banknote, and his statements, (2) admitted the certificate of

analysis into evidence in the absence of a sufficient showing of

chain of custody and (3) held the evidence, in the absence of

the certificate of analysis, was sufficient to support

appellant's conviction for possession of cocaine. For the

reasons that follow, we hold the trial court erred in denying

the motion to suppress, and we reverse appellant's convictions.[1]

---

[1]Because we hold that the cocaine was improperly seized, we
do not reach the issues of the admissibility of the certificate
of analysis or the sufficiency of the evidence.

## FACTS

On October 31, 1996, at about 3:45 p.m., Officer R.D. Lowery of the Petersburg Police Department participated in the execution of a search warrant for a residence at 125 McKeever Street in Petersburg, which was described as the right half of a duplex. The warrant described the items to be seized as "cocaine, books, money, records, scales, any other paraphernalia used and/or distribution of cocaine in the support and sale of cocaine." Lowery confirmed that the target of the search was "[c]ocaine inside the residence." The warrant did not "identify the name of any [specific] person to be searched" and did not "mention . . . that any persons [in general] [were] to be searched."

The accompanying affidavit indicated that an informant made a controlled purchase of cocaine "from the subjects at [the] residence" and that cocaine was "still present" when the informant left the residence. The affidavit did not indicate when the purchase was made, and it did not describe any of the people present except to say that "one [was] the resident."[2] Lowery did not know who owned the residence.

---

[2] On appeal, appellant does not challenge the sufficiency of the warrant or affidavit to support the search of the residence itself.

When Lowery arrived at the residence with the entry team, appellant was sitting on the porch of the duplex on a couch located directly beside the entrance to number 125 and beneath its front window.  Lowery described the porch as running the length of the front of the duplex with a set of steps on either end.  Lowery did not know appellant and did not know, other than by appellant's presence, whether appellant had any connection to the residence to be searched.

Lowery "ordered appellant to the ground at gunpoint . . . [and] handcuffed him for safety reasons" until the rest of the entry team could secure the inside of the residence.  Lowery had observed appellant as Lowery exited the police van and approached the porch and had not seen appellant engage in any suspicious behavior.  Lowery testified, "It's pretty much standard policy when we go into a residence here in the City everybody goes down, everybody gets cuffed and patted down just for weapons for safety reasons."  Lowery further explained that "when you're dealing with a search warrant . . . , especially with narcotics, you always have the possibility of guns."

After Lowery handcuffed appellant, he watched the window as the entry team went in and began to secure the inside of the residence.  The entry team consisted of "approximately 10 or 11" police officers, with Officer Lowery stationed at the front door, "somebody on the back door," and the rest of the officers inside to secure the premises and conduct the search.  The

-

officers found three people inside the residence.  Lowery testified that he did not know for sure when the residence was "secure," but that with "[t]hat many [officers] on the inside," he was "pretty sure it was secure" and did not wait for confirmation before he stood appellant up and advised that "[he] was going to pat [appellant] down for weapons."

Regarding the pat-down, Lowery first testified, "I hit an item, once.  I squeezed it once and I come off of it, it was in my mind to be cocaine.  I asked [appellant] what it was, he made no statement."  In clarifying the circumstances surrounding his discovery, Lowery testified that while patting appellant's shirt pocket with an open palm, he felt "a lump" and "suspected [appellant] had something in his pocket."  Lowery explained further, "I felt something in his pocket, [and] to verify what it was, to make sure I wasn't missing anything, I squeezed it once and I came right off of it."  Lowery then said, "I came off of it because I knew what it was.  It was pretty obvious [that it was cocaine]."  Lowery then retrieved the item, which he described as "nine zips of crack cocaine."  Lowery did not testify that he believed the lump could have been a weapon before he squeezed it, and he never clearly testified that he believed the lump to be cocaine before he squeezed it.

Upon finding the suspected cocaine, Lowery advised appellant he was under arrest and Mirandized him.  Appellant said, "it was for personal use, it was for himself, he wasn't

-

selling it."  In a search incident to arrest, Lowery found a pager and $11, including a dollar bill which someone had altered to look like a five-dollar bill by taping photocopied corners of a five dollar bill onto the four corners of the dollar bill.

Appellant moved to suppress on the ground that the frisk violated the Fourth Amendment.  Appellant contended that the warrant, which was silent regarding the right to search people on the premises, did not authorize Lowery to frisk him and that Lowery had no reasonable, articulable suspicion that he was armed and dangerous in order to justify a frisk.  Appellant also contended that even if the frisk for weapons was appropriate, Lowery had no basis for believing he had found a weapon when he felt the lump in appellant's pocket and, therefore, was not permitted to manipulate the item to determine what it was.

The trial court said it did not "have any problem" with the "plain feel" seizure of the cocaine, stating that "[t]he officer is trained in this sort of thing, when he feels it and he's pretty sure what it is, and he squeezed it to confirm it, he had sufficient cause to make that."  However, it stated expressly, "I'm not making a finding at this point" and gave the parties an opportunity to file memoranda on those issues.

At the time scheduled for sentencing, the court stated:

> I'm going to overrule the motion [to
> suppress because] although the [appellant]
> was not in the house that was scheduled to
> be searched, he was on the couch on the
> front porch.  He could easily have been a

-

> lookout for the people inside.  And
> therefore there's a threat of a danger that
> did exist and is sufficient to establish
> probable cause for a search. . . .
> Further[,] danger existed and the probable
> cause existed because the magistrate had
> issued the search warrant.

## II.

## ANALYSIS

At a hearing on a defendant's motion to suppress, the Commonwealth has the burden of proving that a warrantless search or seizure did not violate the defendant's Fourth Amendment rights.  See Simmons v. Commonwealth, 238 Va. 200, 204, 380 S.E.2d 656, 659 (1989); Alexander v. Commonwealth, 19 Va. App. 671, 674, 454 S.E.2d 39, 41 (1995).  On appeal, we view the evidence in the light most favorable to the prevailing party, granting to it all reasonable inferences fairly deducible therefrom.  See Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).  "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1659, 134 L. Ed. 2d 911 (1996)).  However, we review de novo the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts

-

of the case.  See Shears v. Commonwealth, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996); see also Ornelas, 517 U.S. at 699, 116 S. Ct. at 1659.

Appellant contends Officer Lowery's detention and search of his person pursuant to the authority of the search warrant for the duplex was unreasonable under the United States and Virginia Constitutions.  The Commonwealth argues that the detention was justified as a frisk for safety reasons and that appellant's presence on the porch of the residence for which other officers were executing a search warrant for narcotics provided reasonable suspicion that appellant was engaged in criminal activity.  The trial court ruled that the probable cause which provided the basis for issuance of the warrant to search the premises for narcotics and the associated "threat of . . . danger" provided "probable cause for a search" of appellant. For the reasons that follow, we hold that the search was unlawful under the facts of this case.

A.

PROBABLE CAUSE TO SEARCH APPELLANT'S PERSON

We hold first that neither the issuance of the search warrant nor the risk of danger to the officers during its execution provided Officer Lowery with probable cause to conduct

-

a full search of appellant under the facts of this case.[3]  We are

unaware of any controlling precedent which provides that a

warrant to search only a specified private residence, and not

the people found therein, for narcotics automatically carries

with it the blanket authority to conduct full searches of those

people present either for narcotics or weapons.[4]  Furthermore, we

[3]Had the evidence proven that the search of the residence
yielded cocaine and that the police fully searched appellant
only afterward, the discovery may have been proper as a search
incident to arrest for possession of the contraband found on the
premises, regardless of whether the presence of the contraband
found on the premises would have been sufficient to support a
conviction for its possession.  See Michigan v. Summers, 452
U.S. 692, 695 & n.3, 101 S. Ct. 2587, 2590 & n.3, 69 L. Ed. 2d
340 (1981).  In appellant's case, the Commonwealth did not
advance the argument that the search was valid as incident to
arrest based on narcotics found in the residence.  Further, when
appellant attempted to elicit testimony from Officer Lowery
regarding what was found in the search of the residence, the
trial court ruled that this evidence was irrelevant.

[4]The United States Supreme Court has expressly avoided such
a question.  See Summers, 452 U.S. at 695, 705, 101 S. Ct. at
2590, 2595 (holding "that a warrant to search for contraband
founded on probable cause implicitly carries with it the limited
authority to detain the occupants of the premises while a proper
search is conducted" based in part on fact that "execution of a
search warrant for narcotics is the kind of transaction that may
give rise to sudden violence or frantic efforts to conceal or
destroy evidence" but expressly avoiding "question whether a
search warrant for [private] premises includes the right to
search persons found there" (footnote omitted)); Williams v.
Commonwealth, 4 Va. App. 53, 59, 67, 354 S.E.2d 79, 82, 87
(1987) (holding, based on language in Summers regarding
connection between narcotics and violence, that officers had
reasonable suspicion that Williams was armed and dangerous
necessary to justify weapons frisk based on warrant to search
Williams' residence for narcotics and accompanying affidavit
containing specific information that Williams himself was
engaged in distributing narcotics from the place to be
searched).

conclude that such a holding would be contrary to existing

constitutional precedent.[5]

The Fourth Amendment to the United States Constitution

provides as follows:

> The right of the people to be secure in
> their persons, houses, papers, and effects,
> against unreasonable searches and seizures,
> shall not be violated, and no Warrants shall
> issue but upon probable cause, supported by
> Oath or affirmation, and particularly
> describing the place to be searched, and the
> persons or things to be seized.

See also Va. Const. art. 1, § 10.  Based on these provisions,

the United States Supreme Court stated in Ybarra v. Illinois,

444 U.S. 85, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979), that "a

warrant to search a place cannot normally be construed to

authorize a search of each individual in that place."  Id. at 92

n.4, 100 S. Ct. at 342 n.4 (expressly not considering

"situations where the warrant itself authorizes the search of

unnamed persons in a place and is supported by probable cause to

believe that persons who will be in the place at the time of the

---

[5]In a slightly different context, the United States Supreme Court recently has reaffirmed the "unique, significantly heightened protection afforded against searches of one's person."  See Wyoming v. Houghton, 67 U.S.L.W. 4225, 4227 (U.S. Apr. 5, 1999) (holding that officers, who stopped driver for traffic infraction and received admission that he possessed syringe in plain view for purpose of taking drugs, were allowed, based on probable cause to believe drugs were in the car, to search containers in car, even one allegedly belonging to passenger, but reaffirming holding in United States v. Di Re, 332 U.S. 581, 68 S. Ct. 222, 92 L. Ed. 210 (1948), "that probable cause to search a car did not justify a body search of a passenger").

search will be in possession of illegal drugs"). Compare Morton v. Commonwealth, 16 Va. App. 946, 434 S.E.2d 890 (1993) (upholding conviction of person searched under warrant for apartment where warrant authorized search of "all persons present" and was supported by affidavit regarding drug transactions from reliable informant, apartment manager, and police surveillance establishing presence of cocaine, convicted drug dealers and known fugitives in apartment).

Although Ybarra involved a search warrant for a public bar rather than a private residence, we nevertheless find the Court's holding in Ybarra instructive. The Court further observed in Ybarra that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." Ybarra, 444 U.S. at 85, 100 S. Ct. at 338.

> Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be.

Id. at 91, 100 S. Ct. at 342 (emphasis added). Although one's presence at a private residence in which drugs have been sold provides a stronger nexus between the person and the premises than does presence in a public bar in which drugs have been sold, see 2 Wayne R. LaFave, Search and Seizure § 4.9(e), at

–

633-34 (3d ed. 1996), we do not believe that such a nexus is sufficient, without more, to provide probable cause for personal searches of those present in the absence of a prior judicial determination of probable cause for the search of the people as well as the premises.  Cf. Wyoming v. Houghton, 67 U.S.L.W. 4225, 4227 (U.S. Apr. 5, 1999) (recognizing that "a car passenger . . . will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing" such that officers with probable cause to search a vehicle may search containers therein, even those allegedly belonging to a passenger, which are capable of concealing the items sought, but nevertheless may not conduct body search of passenger).

"As a general rule, 'subject only to a few specifically established and well-delineated exceptions,' warrantless searches are presumptively unreasonable" under the Fourth Amendment.  Farmer v. Commonwealth, 21 Va. App. 111, 115, 462 S.E.2d 564, 565 (1995) (quoting Horton v. California, 496 U.S. 128, 133 & n.4, 110 S. Ct. 2301, 2306 & n.4, 110 L. Ed. 2d 112 (1990)).  The most commonly used exception for searching a person without a search warrant is that the search was conducted incident to a lawful custodial arrest, which, of course, must be based on probable cause to believe the individual arrested has committed a crime.  See United States v. Robinson, 414 U.S. 218, 235-36, 94 S. Ct. 467, 477, 38 L. Ed. 2d 427 (1973); see also 2

-

LaFave, supra, § 4.5(e), at 543-44 (noting that "[i]f there is probable cause to believe that a certain individual has on his person the evidence, fruits, or instrumentalities of crime, it would be an unusual case in which there was not also probable cause to believe that this individual was a participant in the criminal activity under investigation" such that "the more usual procedure is simply to arrest that person and then search him incident to arrest" rather than first obtaining a search warrant for his person). Other exigent "circumstances that will justify a warrantless search include danger to the officer[6] [and] . . . the risk of loss or destruction of evidence." Helms v. Commonwealth, 10 Va. App. 368, 371, 392 S.E.2d 496, 487 (1990) (footnote added).

In determining whether Officer Lowery had probable cause to believe that one of these exceptions existed, thereby justifying a full search of appellant, we are guided by the holding of this Court in Helms, 10 Va. App. 368, 392 S.E.2d 496. In Helms, we held, under similar facts, that officers executing a search warrant for a private residence lacked probable cause to search

---

[6]We refer here only to danger sufficient to provide probable cause for a full search and not to the lower standard of reasonable suspicion for a weapons frisk under Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

–

a container[7] found during a weapons frisk of a person present at the residence. See id. In that case, a confidential informant told police that PCP was being sold at a particular house and made a controlled purchase of PCP from that address. See id. at 369, 392 S.E.2d at 496. The officers then obtained a warrant which authorized a search of the premises for PCP, but neither Helms nor anyone else was described in the search warrant or supporting affidavit. See id. at 369, 372 & n.1, 392 S.E.2d at 496, 498 & n.1.

When police arrived to execute the search warrant and encountered Helms a few feet inside the front door, "[h]e did not act suspicious and was cooperative when confronted, ordered to lie down and submit to a personal search." Id. at 369, 392 S.E.2d at 496. The search yielded a film canister, a small pipe and some keys. See id. The officer seized the items and, suspecting the canister contained PCP or some other illegal drug, he opened the canister and found that it contained what he believed, based on his experience, to be parsley laced with PCP. See id. at 369-70, 392 S.E.2d at 496-97.

Helms conceded on appeal that safety reasons justified a frisk of his person and even the removal of the items from his pocket, but contended that the officer, who admitted he knew the

---

[7]A "search within small containers, such as wallets, cigarette boxes and the like, which are found in or about [an individual's] clothing" is "deemed to be [a search] 'of a person.'" 2 LaFave, supra, § 5.5, at 170.

- 13 -

canister did not contain a weapon, lacked probable cause to arrest Helms or to examine the canister's contents without a search warrant. See id.; see also id. at 373, 392 S.E.2d at 498-99 (Coleman, J., dissenting) (agreeing that Helms conceded legality of frisk for weapons and "agree[ing] with the majority that the question [on appeal] is whether probable cause existed under these circumstances for [officer] reasonably and objectively to believe that the film canister contained PCP or some illicit drug").

We agreed and reversed Helms' conviction.[8]  We held that none of the exceptions to the warrant requirement--"danger to the officer, search incident to a lawful arrest, or the risk of loss or destruction of evidence"--was present in Helms' case. See 10 Va. App. at 371, 392 S.E.2d at 497.  We emphasized that "[Helms] cooperated totally, offering no resistance" and that, "[e]xcept for being on the premises, there [was] no showing of

---

[8]In so doing, we distinguished Harris v. Commonwealth, 9 Va. App. 355, 388 S.E.2d 280 (1990), in which we had held that officers conducting a vehicle stop had probable cause to conduct a warrantless search of a film canister found in a suspect's pocket based on the specific testimony of an officer that "during 'his experience as a police officer he had, on numerous occasions seen film canisters used to transport controlled substances.'"  Helms, 10 Va. App. at 371-72, 392 S.E.2d at 498 (emphasis omitted).  However, Harris was subsequently reversed on appeal to the Virginia Supreme Court, which held that even the facts in Harris were insufficient to provide probable cause for a search of the canister.  See Harris V. Commonwealth, 241 Va. 146, 400 S.E.2d 191 (1991).  In reversing Harris, the Virginia Supreme Court noted that "law-abiding citizens, on a daily basis, also use film canisters to store film, which is a legitimate use."  Id. at 154, 400 S.E.2d at 196.

- 14 -

[Helms'] association with any person who was the object of the police investigation, nor was any person named or described in the search warrant." Id. at 372, 392 S.E.2d at 498. Under those facts, we held that the record "disclose[d] no legally cognizable reason for the warrantless search of the film canister" and that the trial court erred in denying the motion to suppress. Id.

In appellant's case, as in Helms, the search warrant was for a private residence in which narcotics were being sold, but neither the warrant nor the accompanying affidavit named or described a person or people to be searched during the search of the premises. Further, here as in Helms, Officer Lowery did not know who appellant was, and no evidence other than appellant's mere presence on the porch linked him to the premises. Finally, here as in Helms, appellant was cooperative and engaged in no suspicious or furtive behavior giving rise to the belief that he might be attempting to conceal contraband sought in the warrant or reaching for a weapon with which to challenge the officers. Therefore, here as in Helms, the officers lacked the probable cause necessary to conduct a full search of appellant. See generally 2 LaFave, supra, § 4.9(c) (discussing factors involved in determining whether person not arrested or described in a premises search warrant may be searched for items described in warrant and noting that "the requisite probable cause is most likely to be deemed present if the person lives at the place

-

searched, was implicated by the search warrant affidavit in the crimes under investigation, had engaged in suspicious or incriminating conduct, or was found in immediate proximity to contraband in open view" (footnotes omitted)).

B.

DETENTION AND FRISK FOR WEAPONS

In the absence of probable cause to search appellant incident to execution of the search warrant for the premises, the Commonwealth argues that Officer Lowery's actions constituted a justifiable detention and frisk for weapons. "[A] warrant for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." Michigan v. Summers, 452 U.S. 692, 705, 101 S. Ct. 2587, 2595, 69 L. Ed. 2d 340 (1981) (involving warrant to search private residence). We assume without deciding that, pursuant to execution of the search warrant for the premises, Officer Lowery was entitled to conclude that appellant was an occupant subject to detention and to frisk appellant for weapons. Despite these assumptions, we nevertheless conclude that Lowery's actions exceeded the permissible scope of such a frisk.

The United States Supreme Court has recognized that principles which permit an officer to seize contraband found in plain view under certain circumstances also may permit an

-

officer to seize contraband detected by the sense of touch

during a weapons frisk:

> If a police officer lawfully pats down a
> suspect's outer clothing and feels an object
> whose contour or mass makes its identity
> immediately apparent, there has been no
> invasion of the suspect's privacy beyond
> that already authorized by the officer's
> search for weapons; if the object is
> contraband, its warrantless seizure would be
> justified by the same practical
> considerations that inhere in the plain view
> context.

Minnesota v. Dickerson, 508 U.S. 366, 375-76, 113 S. Ct. 2130,

2137, 124 L. Ed. 2d 334 (1993) (emphasis added).  The Court has

made clear, however, that where the character of the item

detected is not immediately apparent and the officer makes "no

claim that he suspected [the] object to be a weapon," he may not

investigate further.  See id. at 377-78, 113 S. Ct. at 2138-39.

The officer may not engage in "squeezing," "sliding" or

"otherwise manipulating" the item once he has concluded it is

not a weapon because such "exploration . . . [is] unrelated to

'[t]he sole justification of the search [under Terry:] . . . the

protection of the police officer and others nearby.'"  Id. at

378, 113 S. Ct. at 2138-39 (quoting Terry v. Ohio, 392 U.S. 1,

29, 88 S. Ct. 1868, 1884, 20 L. Ed. 2d 889 (1968)); see id. at

378, 113 S. Ct. at 2139 (analogizing to plain view case of

Arizona v. Hicks, 480 U.S. 321, 107 S. Ct. 1149, 94 L. Ed. 2d

347 (1987), in which Court held stolen stereo not properly

seized under plain view doctrine because officers had to move

stereo to see serial numbers which allowed them to conclude item was stolen).

Here, viewing the facts in the light most favorable to the Commonwealth, the prevailing party below, Officer Lowery testified that while patting appellant's shirt pocket with an open palm, he felt "a lump" and "suspected [appellant] had something in his pocket." (Emphasis added). Lowery did not testify that he believed the item to be a weapon nor did he testify that the character of the lump was immediately apparent to him after patting it with an open hand. Rather, he testified that he "squeezed" the lump and "came off of it because [he] knew what it was" after squeezing it. Because the evidence does not support a finding that the character of the item was immediately apparent to Lowery during the permissible scope of the frisk, he was not permitted to investigate further.[9] Therefore, even viewing the evidence in the light most favorable

_____

[9]Although the trial court denied that it was making any findings on this issue during the hearing on the motion to suppress, it observed that "[t]he officer is trained in this sort of thing, when he feels it and he's pretty sure what it is, and he squeezes it to confirm it, he had sufficient cause to make that." Assuming without deciding that these statements constituted findings of fact by the trial court, they are both unsupported by the evidence and insufficient under the plain feel doctrine to permit the seizure. First, on a factual level, Officer Lowery never testified that he was "pretty sure" what the item was before he squeezed it. When the prosecutor tried to clarify this point, asking, "When you felt the lump, Officer, did you suspect anything at that point?" Lowery responded merely, "I suspected he had something in his pocket." (Emphasis added). Second, even assuming Lowery was "pretty sure" the lump was cocaine when he first felt it, he had to squeeze the lump to

to the Commonwealth, we are unable to conclude that the Commonwealth carried its burden of proving the frisk and resulting seizure of the cocaine under the plain feel doctrine did not violate appellant's rights.  Accordingly, we hold that the trial court erred in failing to exclude the cocaine.

Because Officer Lowery's discovery of the cocaine led to his arrest of appellant and the incident search revealing the altered one-dollar bill which provided the basis for appellant's conviction for possession of forged United States currency, both of appellant's convictions must be reversed.

<u>Reversed.</u>

---

confirm its identity, which does not translate into the legal conclusion that its "identity [was] immediately apparent" <u>before</u> the squeeze.