COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Elder and Bray
Argued at Richmond, Virginia


CARLOS CARRASQUILLO

                                    MEMORANDUM OPINION* BY
v.    Record No. 0372-00-2          JUDGE JERE M. H. WILLIS, JR.
                                         MAY 22, 2001
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
                          James A. Luke, Judge

                Mary Katherine Martin (Peter D. Eliades;
                Homer C. Eliades; Eliades & Eliades, P.C., on
                brief), for appellant.

                Marla Graff Decker, Assistant Attorney
                General (Mark L. Earley, Attorney General, on
                brief), for appellee.


     On appeal from his bench trial conviction of possession of

cocaine with the intent to distribute, in violation of Code

§ 18.2-248, Carlos Carrasquillo contends that the trial court

erred (1) in denying his motion to suppress; and (2) in ruling

that the officer was entitled to detain him pursuant to his

arrest for public drunkenness.  For the following reasons, we

affirm the judgment of the trial court.

                        I.   BACKGROUND

     On September 13, 1998, Hopewell police received a call that

"a subject was on a back porch" at a residence on 3502 Boston
_____
     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

Street.  Officer Gregory W. Peck was dispatched to the scene.
Upon arrival, Officer Peck found Carrasquillo asleep on the
screened-in back porch.  Officer Peck awakened Carrasquillo and
removed him from the porch.  Officer Peck testified that he could
smell the odor of alcohol "about [Carrasquillo's] person" and that
"[Carrasquillo] was very confused about where he was or how he got
there."

Officer Peck asked Carrasquillo his name and inquired as to
where he lived.  Carrasquillo gave his name and said he "lived
with his family, but they worked nights and no one was home."
Officer Peck "determined that [Carrasquillo] had no one to take
care of him," so he "placed him under arrest for drunk in public."
He conducted a "general pat-down of [Carrasquillo's] person for
any weapon or contraband he may have [had] on him."  Officer Peck
recovered $508 in various denominations and "several sheets of
paper showing different names and numbers next to them" from
Carrasquillo's person.

Officer Peck transported Carrasquillo to Riverside Regional
Jail.  At trial, Officer Peck explained the procedure at the jail:

> Once we enter the sally port, he goes into a
> holding area where we see the Magistrate,
> have the warrants issued and served.  Then
> we go to a smaller area between the holding
> area and booking area, where the Riverside
> Regional Jail officers do a more thorough
> pat down and search.

Carrasquillo was taken before a magistrate, who issued a
warrant charging him with "drunk in public."  The magistrate noted

-

on the warrant, "release when sober," and Officer Peck served the warrant on Carrasquillo. Officer Peck and Carrasquillo were then met at the receiving area of the jail by Sergeant David L. Somarivo, the on-duty booking supervisor. Consistent with jail procedures, Sergeant Somarivo conducted a second, more thorough search. Sergeant Somarivo testified:

> My job is to pat-search the arrestees down as they come in the jail. Search them for weapons or whatever else that they might have, that can injure staff or anybody else in the jail.
>
> [Carrasquillo] came in, he had two outer layers of clothing. Policy states that when they come in we remove a layer of clothing.
>
>   *       *       *       *       *       *       *
>
> He had two pairs of shorts on.
>
>   *       *       *       *       *       *       *
>
> I had him remove one of the pairs of shorts that he had on. As I bent down to pick up the shorts, I observed a bottle -- like a Tylenol bottle [high up] in [the left front] pocket [of the shorts which he had just removed].

Sergeant Somarivo removed the bottle from the pocket. He opened the bottle and found five packets of cocaine inside. Another packet of cocaine was found in the watch pocket of the shorts that Carrasquillo was still wearing. Carrasquillo was charged with possession of cocaine with the intent to distribute.

Carrasquillo moved to suppress the cocaine on the grounds that he was illegally arrested and that the subsequent search by arresting officers constituted an unreasonable search and seizure in violation of his Fourth and Fourteenth Amendment rights. The trial court overruled the motion.

At the conclusion of the trial, Carrasquillo moved to strike the Commonwealth's evidence on the grounds that the court lacked jurisdiction and that, because he was charged with a non-jailable offense, he should have been released as soon as the magistrate issued the warrant for being drunk in public. He argued that the search of his person following the issuance of the warrant was unlawful and a violation of his Fourth and Fourteenth Amendment rights.

The trial court found Carrasquillo guilty as charged.

## II.  THE SEARCH

Carrasquillo contends that the trial court erroneously denied his motion to suppress the cocaine. He argues that this was seized by Sergeant Somarivo pursuant to an unauthorized strip search in violation of his Fourth Amendment rights. We disagree.

"In reviewing a trial court's denial of a motion to suppress, 'the burden is upon the defendant to show that the ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997)

-

(en banc) (citation omitted).  "We review de novo the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case."  Hayes v. Commonwealth, 29 Va. App. 647, 652, 514 S.E.2d 357, 359 (1999) (citation omitted).  "In performing such analysis, we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  McGee, 25 Va. App. at 198, 487 S.E.2d at 261 (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)).

While Carrasquillo acknowledges that a lawful custodial arrest authorizes a full search of the person, see United States v. Robinson, 414 U.S. 218, 234-35 (1973), he argues that the search that resulted in the discovery of cocaine in his case was akin to a "strip search" that required "special justification," which was not present.  See Taylor v. Commonwealth, 28 Va. App. 638, 642, 507 S.E.2d 661, 663 (1998) (holding that strip searches require special justification since they are peculiarly intrusive).

Carrasquillo's contention that the officers needed "special justification" to perform a strip search is not relevant to the facts of this case, because no strip search occurred.  "'A strip search generally refers to an inspection of a naked individual, without any scrutiny of his body cavities.'"  Hughes v.

-

Commonwealth, 31 Va. App. 447, 455, 524 S.E.2d 155, 159 (citation omitted). Here, Carrasquillo was wearing two pairs of shorts. He was required to remove the outer layer. The removed pair of shorts held the cocaine. Carrasquillo was never naked and, thus, was never subjected to a strip search.

### III. PUBLIC INTOXICATION

Relying upon Code §§ 19.2-74(A)(2) and 18.2-388, Carrasquillo claims that he was unlawfully detained because "drunk in public" is a non-jailable offense for which only a summons or citation may be issued. He argues that Code § 18.2-388 does not permit a search incident to the limited detention required to issue the summons. We disagree.

"While penal statutes must be strictly construed against the Commonwealth, '[t]he plain, obvious, and rational meaning of a statute is always preferred to any curious, narrow or strained construction; a statute should never be construed so that it leads to absurd results.'" Newton v. Commonwealth, 21 Va. App. 86, 89, 462 S.E.2d 117, 119 (1995) (quoting Branch v. Commonwealth, 14 Va. App. 836, 839, 419 S.E.2d 422, 424 (1992)).

Examining the plain meaning of Code § 18.2-388, we hold that it does not exclude the custodial arrest of a public inebriate. Code § 18.2-388, adopted by Hopewell City Ordinance 25-18, provides in pertinent part:

> If any person . . . is intoxicated in
> public, . . . he shall be deemed guilty of a
> Class 4 misdemeanor. In any area in which

-

there is located a court-approved detoxification center a law-enforcement officer may authorize the transportation, by police or otherwise, of public inebriates to such detoxification center <u>in lieu of arrest</u> . . . .

<u>Id.</u> (emphasis added).

Use of the phrase "in lieu of arrest" suggests that custodial arrest is an option when an officer encounters a public inebriate.  This interpretation is consistent with other portions of the Code.  <u>See</u> Code § 9-173.1 (stating that the Department of Criminal Justice Services shall promulgate rules and regulations for the purpose of making funds available to local units of government for establishing, operating and maintaining or contracting for detoxification center programs to provide an alternative to arresting and jailing public inebriates).

Carrasquillo further argues that Officer Peck should have issued a summons and released him pursuant to Code § 19.2-74(A)(2).[1]  That code section, however, specifically

---

[1] Code § 19.2-74(A)(2) states:

> Whenever any person is detained by or is in the custody of an arresting officer for a violation of any county, city, or town ordinance or of any provision of this Code, punishable as a Class 3 or Class 4 misdemeanor or any other misdemeanor for which he cannot receive a jail sentence, except as otherwise provided in Title 46.2, or to the offense of public drunkenness as defined in § 18.2-388, the arresting officer shall take the name and address of such

-

excludes from its coverage, <u>inter</u> <u>alia</u>, "the offense of public drunkenness as defined in [Code] § 18.2-388."  <u>See</u> Code § 19.2-74(A)(2).  Furthermore, Code § 19.2-74(A)(1) provides that "[a]nything in this section to the contrary notwithstanding, . . . if any person is reasonably believed by the arresting officer to be likely to cause harm to himself or to any other person, a magistrate or other issuing authority having jurisdiction shall proceed according to provisions of [Code] § 19.2-82," which outlines the procedure for arrest without a warrant.

Carrasquillo was so intoxicated that he fell asleep on another person's porch.  When awakened by Officer Peck, he did not know where he was or how he got there.  He could provide no adequate information as to his place of residence or the identity of those with whom he lived.  Given Carrasquillo's highly intoxicated state, Officer Peck was justified in transporting him to the magistrate in order to obtain a warrant. The magistrate was justified in concluding that Carrasquillo was a danger to himself or others and in ordering that he be detained at the jail until he became sober.

---

person and issue a summons or otherwise
notify him in writing to appear at a time
and place to be specified in such summons or
notice. . . .

-

For these reasons, we affirm the judgment of the trial court.

Affirmed.