COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Russell and Malveaux
Argued at Charlottesville, Virginia

DELOS LAMONT WELLS, A/K/A
 MONTY

MEMORANDUM OPINION* BY
v.      Record No. 0201-17-3      JUDGE WESLEY G. RUSSELL, JR.
OCTOBER 17, 2017

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF WAYNESBORO
Charles L. Ricketts, III, Judge

Michael J. Hallahan, II, for appellant.

John I. Jones, IV, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Delos Lamont Wells (hereinafter "appellant") was convicted in a bench trial of

possession with the intent to distribute synthetic marijuana, a Schedule I controlled substance,

after previously having been convicted of a violation of Code § 18.2-248.  On appeal, he argues

the trial court erred in denying his motion to suppress evidence obtained during a search of his

person, and therefore, his conviction should be reversed.  For the reasons that follow, we affirm

his conviction.

BACKGROUND[1]

Based upon information from a reliable confidential informant, Special Operations

Division Detective Jessie Shaver of the Waynesboro Police Department obtained a search

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Wells began oral argument in this Court noting that there were no facts in dispute and
that the appeal only involved the application of legal principles to the undisputed facts.

warrant for narcotics and items used in narcotics distribution at 129 South Bath Street in Waynesboro. The warrant authorized the search of the described dwelling and "all persons inside the residence including all vehicles associated with the residence." Officers executed that warrant at 9:26 p.m. on April 29, 2015.

The property at 129 South Bath Street was almost entirely surrounded by a privacy fence. Captain Mike Martin stopped his police vehicle in the alley behind the house as a SWAT team was entering the residence through the front door. Through an opening in the privacy fence at the back of the property, Martin saw Wells in the backyard crouching behind a "junked" motor vehicle that was approximately twenty feet from the house. Wells was looking towards the SWAT team at the front door. As the lights of Martin's vehicle illuminated him, Wells looked directly at Martin and then sprinted away from Martin. Martin shouted to appellant that he was a police officer and directed Wells to stop, but Wells kept running and jumped over the fence into an adjoining yard. As Wells rounded a corner, another officer intercepted him and placed him in handcuffs. The police returned Wells to the house within two minutes and searched him "[p]ursuant to the [s]earch [w]arrant." As a result of the search of Wells, police recovered $820 in cash and four sealed packages containing roughly thirty-four grams of synthetic marijuana.

In an upstairs bedroom of the residence, police located a birth certificate, wallet, and driver's license belonging to Wells. They also recovered a set of digital scales from the pocket of a pair of jeans found in the bedroom, and several baggies were found on the floor and in pockets of other pairs of jeans. From the bed, police recovered a sealed foil packet marked "train wreck," which later was determined to contain more than six grams of synthetic marijuana. Two of the baggies contained a residue that later was determined to be cocaine.

At the suppression hearing, appellant argued that he was not inside the residence and therefore, not subject to the search warrant. From this premise, he contended that the search of

his person violated the Fourth Amendment, rendering the synthetic marijuana found on his person inadmissible at trial. The Commonwealth responded that, when interpreting search warrants, "dwelling equals curtilage." Relying on Glenn v. Commonwealth, 10 Va. App. 150, 390 S.E.2d 505 (1990), the trial court denied the motion to suppress, explaining, "[t]he Court of Appeals says a description in a [w]arrant of a dwelling, or a certain place, is taken to include the area within the curtilage of that dwelling. . . . And so in accordance with the Glenn case, I believe [the officer] fell within the scope of this [s]earch [w]arrant, and that the [p]olice, pursuant to executing the [s]earch [w]arrant, had the authority to search Mr. Wells."[2]

Wells contends on appeal that the trial court erred in determining the scope of the warrant. He argues that, in common parlance, he was "outside" the residence when he was seen in the backyard and that the phrase "inside the residence" limited the class of persons to be searched to those literally inside the residence. As a result, he contends that the search of his person violated the Fourth Amendment, rendering the synthetic marijuana discovered as a result of that search inadmissible. The Commonwealth, acknowledging that Wells was "outside" in the sense that, when he was first encountered he was in the backyard of the residence, argues that, because we previously have held that a warrant authorizing a search of a dwelling also authorizes a search of the curtilage, the trial court correctly concluded that Wells, who was found within the curtilage, fell within the scope of the warrant.[3]

---

[2] The trial court found that Wells was within the curtilage of the residence when police arrived to execute the search warrant. Wells has not challenged this ruling.

[3] The Commonwealth first asserts that appellant has provided no authority and only conclusory argument in support of his assigned error, so this Court should treat his assignment of error as waived pursuant to Rule 5A:20(e). After a complete review of the record, we find appellant has presented enough authority and argument to afford this Court a "legal prism through which to view his alleged error." Bartley v. Commonwealth, 67 Va. App. 740, 746, 800 S.E.2d 199, 202 (2017).

ANALYSIS

I.  Standard of Review

In reviewing the denial of a motion to suppress, we "consider the facts in the light most favorable to the Commonwealth, the prevailing party at trial." Malbrough v. Commonwealth, 275 Va. 163, 168, 655 S.E.2d 1, 3 (2008).  It is Wells' burden to show that when viewing the evidence in such a manner, the trial court committed reversible error.  Harris v. Commonwealth, 276 Va. 689, 695, 668 S.E.2d 141, 145 (2008).  In doing so, however, the Court is "bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence."  Malbrough, 275 Va. at 168, 655 S.E.2d at 3.  Ultimately, the Court reviews *de novo* the question of whether a search or seizure violated the Fourth Amendment.  Salahuddin v. Commonwealth, 67 Va. App. 190, 202, 795 S.E.2d 472, 478 (2017).

II.  The Fourth Amendment

The Fourth Amendment guarantees

> [t]he right of the people to be secure in their persons, houses,
> papers, and effects, against unreasonable searches and seizures,
> shall not be violated, and no warrants shall issue, but upon
> probable cause, supported by oath or affirmation, and particularly
> describing the place to be searched, and the persons or things to be
> seized.

U.S. Const. amend. IV.  Thus, the Fourth Amendment's guarantee protects people, their houses, and their things from both unreasonable search and unreasonable seizure.  As the United States Supreme Court has observed,

> [a] search may be of a person, a thing, or a place.  So too a seizure
> may be of a person, a thing, or even a place.  A search or a seizure
> may occur singly or in combination, and in differing sequence.  In
> some cases the validity of one determines the validity of the other.

Bailey v. United States, 568 U.S. 186, 189 (2012). Resolution of the issue before us requires review of one seizure, the seizure of Wells, and two searches, the search of the residence and the search of Wells.

III. Legality of the Seizure and Subsequent Search of Wells

The trial court found that the seizure and subsequent search of Wells satisfied the requirements of the Fourth Amendment because he fell within the scope of the warrant, which authorized the search of the residence and "all persons inside the residence . . . ." The parties also frame the argument as determining the proper scope of the warrant, with the Commonwealth arguing that "all persons inside the residence" is correctly read as allowing the search of people found within the curtilage of the residence, and Wells arguing that "inside the residence" is best read as a limiting phrase that precludes the search of people such as Wells who were not found literally "inside" the residence.[4]

Whether "inside the residence" is a clear limitation on who may be searched or a broader interpretation of the phrase is warranted presents an interesting question that has not been addressed directly in our prior cases. We can resolve the case, however, without answering this interesting question and prudential concerns recommend that we do just that.

Like many cases involving Fourth Amendment issues, this case has many layers and could be resolved in a myriad of ways. The Supreme Court recently counseled that, in Fourth Amendment cases, we should avoid resolving "nuanced contest[s]" regarding Fourth Amendment issues if another path provides "the best and narrowest ground[]" for resolving the case. Commonwealth v. White, 293 Va. 411, 419, 799 S.E.2d 494, 498 (2017) (internal quotation marks, footnote, and citations omitted). Such a path exists in this case.

---

[4] Wells does not challenge the validity of the warrant; rather, he argues that he did not fall within the warrant's description of people, things, or places to be searched.

## A. Seizure of Wells

Regardless of whether the scope of the warrant was sufficient to encompass Wells as he was hiding in the backyard, it is clear that his seizure by police did not offend the Fourth Amendment. In Michigan v. Summers, 452 U.S. 692 (1981), the United States Supreme Court was called upon to address a similar situation. Specifically, the basic facts in Summers were that

> [a]s Detroit police officers were about to execute a warrant to search a house for narcotics, they encountered [Summers] descending the front steps. They requested his assistance in gaining entry and detained him while they searched the premises. After finding narcotics in the basement and ascertaining that [Summers] owned the house, the police arrested him, searched his person, and found in his coat pocket an envelope containing 8.5 grams of heroin.

Id. at 693 (footnote omitted). Charged with possessing the heroin found on his person, Summers "moved to suppress the heroin as the product of an illegal search in violation of the Fourth Amendment," and the Michigan courts agreed that the Fourth Amendment required suppression of the evidence. Id. at 694. The United States Supreme Court granted certiorari and reversed. Id.

Specifically, the high Court concluded that "a warrant to search [a residence] for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted."[5] Id. at 705. Subsequent cases have made clear that, consistent with the Fourth Amendment, police officers executing a search warrant for a physical location may seize and detain people they encounter at the location and its immediate vicinity. See, e.g., Bailey, 568 U.S. at 199 (recognizing that police officers possess "categorical authority to detain incident to the execution of a search warrant" so long as the

---

[5] It should be noted that Summers was considered an "occupant" of the premises even though he was outside and coming down the steps when the officers arrived to search the premises.

people detained are found in "the immediate vicinity of the premises to be searched"). Furthermore, "[a]n officer's authority to detain incident to a search is categorical; it does not depend on the quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure . . . [and lasts] for the duration of the search" of the premises identified in the warrant. Muehler v. Mena, 544 U.S. 93, 98 (2005).

Applying these principles to the instant case, the officers' seizure and detention of Wells was lawful. Wells was in the vicinity of the residence to be searched when the officers arrived to execute the search warrant. In fact, he was not only in the vicinity of the residence, he was within the curtilage of the residence, and therefore, was located in the area to be searched under the warrant. Thus, even if Wells was outside of the scope of the warrant because he was not a "person[] inside the residence," the police, consistent with the requirements of the Fourth Amendment, could seize and detain him for the duration of the search of 129 South Bath Street.

### B. Search of Wells

Although the officers had the authority to seize and detain Wells, it does not necessarily follow that they had the right to search him. Hayes v. Commonwealth, 29 Va. App. 647, 653, 514 S.E.2d 357, 360 (1999) (interpreting Summers and refusing to conclude that "a warrant to search only a specified private residence, and not the people found therein, for narcotics automatically carries with it the blanket authority to conduct full searches of those people present either for narcotics or weapons"); see also Ybarra v. Illinois, 444 U.S. 85, 91 (1979). Rather,

> a search or seizure of a person must be supported by probable
> cause *particularized with respect to that person*. This requirement
> cannot be undercut or avoided by simply pointing to the fact that
> coincidentally there exists probable cause to search or seize
> another or to search the premises where the person may happen to
> be.

Hayes, 29 Va. App. at 655, 514 S.E.2d at 361 (quoting Ybarra, 444 U.S. at 91). Thus, even when a defendant is properly seized pursuant to Summers, police must have an independent justification for conducting a search of the person seized.

For example, the search of the defendant in Summers was justified as a search incident to arrest. Summers, 452 U.S. at 705. Specifically, having found evidence of crimes in the search of the residence and identifying Summers as the owner of the residence, the police had probable cause to arrest him, justifying the subsequent search of his person.

The instant case is similar. Here, the search of the bedroom ultimately revealed evidence of criminal activity. Specifically, police found materials for packaging drugs, digital scales, and substances that proved to be synthetic marijuana and cocaine residue. Furthermore, police discovered evidence tying Wells to the room, namely his driver's license and birth certificate. Thus, once the search of the bedroom was complete, there is no question that probable cause existed to arrest Wells.[6]

The only difference from the Summers scenario is that the officers here searched Wells *before* the search of the bedroom had been completed. In some circumstances, this might render the contraband found on Wells' person inadmissible;[7] however, under the particular circumstances here, the sequence of events does not affect the admissibility of the seized contraband.

---

[6] Given our resolution of the case, we need not, and thus do not, address the question of whether police had probable cause to arrest Wells as a result of what was observed prior to his seizure.

[7] See Sibron v. New York, 392 U.S. 40, 63 (1968) ("It is axiomatic that an incident search may not precede an arrest and serve as part of its justification."); but see, Wright v. Commonwealth, 222 Va. 188, 193, 278 S.E.2d 849, 852-53 (1981) ("Where, as here, the product of the search was not essential to probable cause to arrest and 'the formal arrest followed quickly on the heels of the challenged search of [the defendant's] person, we do not believe it particularly important that the search preceded the arrest rather than vice versa.'" (quoting Rawlings v. Kentucky, 448 U.S. 98, 111 (1980))).

The doctrine of inevitable discovery provides that "evidence obtained by unlawful means is nonetheless admissible 'if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means.'" Commonwealth v. Jones, 267 Va. 532, 536, 593 S.E.2d 204, 206 (2004) (quoting Nix v. Williams, 467 U.S. 431, 444 (1984)).[8] Here, there is no question that discovery of the drugs held by Wells was inevitable.

Prior to encountering Wells that night, the officers had obtained a search warrant entitling them to search the bedroom where they ultimately discovered contraband and items linking Wells to the room. The discovery of the bedroom evidence was thus wholly independent of their seizure and subsequent search of Wells and cannot be tainted by any alleged infirmity of the search of his person. Coupled with the officer's independent ability to seize and detain Wells pursuant to Summers, the ultimate discovery of the synthetic marijuana on Wells' person was a certainty.

Although Wells argues that he was not subject to seizure and detention pursuant to Summers because he was not in the "vicinity" of the residence when police came to execute the warrant, he conceded at oral argument that the search of the bedroom provided probable cause to arrest him and that, assuming his detention that evening, he would have been searched incident to arrest after the search of the bedroom. Given our conclusion that the seizure and detention of Wells falls squarely within the rule of Summers, it is a certainty that the synthetic marijuana found on Wells' person would have been discovered by lawful means. Accordingly, it was admissible in Wells' trial, and the trial court did not err in refusing to suppress it.

_____

[8] Once again, we do not reach the questions of whether Wells could have been searched pursuant to the terms of the warrant or whether independent probable cause would have supported a search of Wells before the search of the bedroom; rather, pursuant to the doctrine of inevitable discovery, the contraband found on Wells was admissible no matter how those questions are answered.

IV.  Affirming on Alternate Grounds

We acknowledge that the trial court did not base its ruling on the doctrine of inevitable discovery and that the Commonwealth did not make such an argument below, focusing entirely on its position that Wells fell within the scope of the warrant.  Neither fact prevents us from resolving the case on the basis of inevitable discovery.

In Perry v. Commonwealth, 280 Va. 572, 581-82, 701 S.E.2d 431, 437 (2010), the Supreme Court held that

> an appellate court [may] affirm a judgment on any ground
> appearing in the record . . . [and] is not limited to the grounds
> offered by the trial court in support of its decision, and [may]
> affirm the court's judgment on alternate grounds, if such grounds
> are apparent from the record.

(Internal quotation marks and citations omitted).[9]  The Perry Court also made clear that the "[f]ailure [of appellee] to make the argument before the trial court" does not preclude the appellate court from affirming on that basis so long as the factual record on appeal is sufficient to provide the basis for the alternative grounds for affirmance.  Id. at 580, 701 S.E.2d at 436.[10]

---

[9] Although this principle is often described as the "right for the wrong reason" doctrine, we utilize it without finding that the trial court erred regarding its interpretation of the warrant. Rather, we recognize that whether or not Wells fell within the scope of the warrant, the end result, the admissibility at trial of the synthetic marijuana found on his person, is the same.

[10] In Brown v. Commonwealth, 270 Va. 414, 421 n.2, 620 S.E.2d 760, 764 n.2 (2005), the Supreme Court noted that it would not consider an inevitable discovery argument if the Commonwealth had not made the argument in the trial court.  In support of this conclusion, the Brown Court cited Eason v. Eason, 204 Va. 347, 352, 131 S.E.2d 280, 283 (1963), for the proposition that an appellee cannot benefit on appeal from an argument that was not argued in the trial court.  In Perry, the Supreme Court repudiated that rule from Eason, noting that it "is too broad and is inconsistent with case law that followed it."  280 Va. at 580, 701 S.E.2d at 436.  As noted above, Perry makes clear that an appellee's "[f]ailure to make the argument before the trial court" does not prevent an appellate court from affirming on an alternative ground so long as no additional factfinding is necessary to support the alternative ground.  Id.  Accordingly, that portion of Brown has been overruled.

- 10 -

Here, as noted above, the factual record in the trial court is sufficient to allow us to determine that the synthetic marijuana found on Wells' person inevitably would have been discovered. From the record, it is clear that the officers' seizure and detention of Wells was justified under Summers. Even Wells concedes as a matter of fact that, once he was seized and detained, the items found in the bedroom made his arrest and a search of his person that evening inevitable. As a result, it is clear that the synthetic marijuana found on his person was admissible at his trial. Accordingly, we affirm his conviction.

CONCLUSION

For the foregoing reasons, appellant's conviction for possession with the intent to distribute synthetic marijuana, a Schedule I controlled substance, after having been previously convicted of a violation of Code § 18.2-248 is affirmed.

Affirmed.